### In re SEATRAIN LINES, INC., Debtor.

**Hal M. HIRSCH, as Trustee of the Estate of Seatrain Lines, Inc., Plaintiff,**

v.

**The LONDON STEAMSHIP OWNERS' MUTUAL LIFE INSURANCE ASSOCIATION LIMITED, The Travelers Companies, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, The Insurance Company of the State of Pennsylvania and ABC Corporation "1" through ABC Corporation "10," Defendants.**

Bankruptcy Nos. 92B 46393 (CB), 95 Civ. 1503 (SS), 95 Civ. 6954 (SS) and 95 Civ. 6955 (SS). Adv. No. 94–9066A.

United States District Court, S.D. New York.

March 25, 1996.

Gainsburg & Hirsch, Purchase, N.Y. (David M. Pollak, Mark B. Moburg, of counsel), for Plaintiff.

Simpson Thacher & Bartlett, New York City (Mark Thompson, of counsel), for Defendants The Travelers Insurance Company, The Travelers Indemnity Company, and The Travelers Indemnity Company of Connecticut (formerly The Travelers Indemnity Company of Rhode Island).

1. The Pennsylvania Defendants have been substituted in place of their corporate parent, American International Group ("AIG"), which was named in the original Complaint.

2. The other named defendants do not join in this motion. Defendant London Steamship Owners' Mutual Life Insurance Association Limited has been involved in settlement negotiations with

McMahon, Martine & Gallagher, New York City (Timothy D. Gallagher, of counsel), for Defendants National Union Fire Insurance Company of Pittsburgh, Pennsylvania and The Insurance Company of the State of Pennsylvania.

### *OPINION AND ORDER*

SOTOMAYOR, District Judge.

This motion to withdraw the reference arises from the Chapter 7 bankruptcy case of debtor Seatrain Lines, Inc. ("Seatrain"). Seatrain has filed an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), seeking coverage and defense for asbestos-related personal injury claims that have been filed in various courts against Seatrain. The moving defendants, the Travelers Insurance Company, the Travelers Indemnity Company, the Travelers Indemnity Company of Connecticut (formerly the Travelers Indemnity Company of Rhode Island) (collectively "Travelers"), the National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and the Insurance Company of the State of Pennsylvania (collectively the "Pennsylvania Defendants")[1] move for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference of this action to the Bankruptcy Court.[2] Travelers separately appeals two Bankruptcy Court Orders issued against it in connection with the adversary proceeding.

For the following reasons, the Motion to Withdraw the Reference is **DENIED** and Travelers' appeals of Orders of the Bankruptcy Court are also **DENIED**.

### *BACKGROUND*

Seatrain, founded in 1931, was once a robust shipping line engaged in three maritime businesses: worldwide shipping of container-

plaintiff. (Tr. of Hearing before Bankruptcy Judge Cornelius Blackshear at 8.) Defendants ABC Corporation "1" through ABC Corporation "10" are unknown companies that may have provided insurance coverage to Seatrain at some time in the past. (Adversary Proceeding Cplt. ¶ 9, 13.)

ized cargo, ship chartering, and the construction of supertanker oil carriers. Many of Seatrain's ships contained asbestos (Adversary Proceeding Cplt. ¶ 10), and thousands of Seatrain's sailors and shipbuilders were exposed to the hazardous substance. (Pl.'s Mem. of Law in Opp. to Travelers' Motion for Withdrawal of Ref. at 4.)

Seatrain filed its first bankruptcy petition in 1981 under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Proceeding"). Travelers filed a proof of claim against the bankruptcy estate, seeking to collect unpaid insurance premiums, and eventually stipulated to a claim of $1 million (the "1981 Claim"). The Bankruptcy Court allowed the 1981 Claim in 1984. Seatrain emerged from Chapter 11 bankruptcy in 1987, but it did not repay the money it owed to Travelers.

Seatrain's financial difficulties did not abate, and the shipping line filed for Chapter 7 bankruptcy protection on November 17, 1992. Approximately 110 personal injury claims, including asbestos exposure claims, filed in various courts were pending against Seatrain as of the petition date. (Adversary Proceeding Cplt. ¶ 11.)

The Trustee of the Chapter 7 estate, Hal M. Hirsch, faced an immediate problem in determining the extent of Seatrain's insurance coverage. Virtually all of Seatrain's books and records, including its insurance policies, had been destroyed pre-petition. Seatrain had stored its books and records in a commercial warehouse and had then neglected to pay the storage fees, prompting the warehouse to dispose of the property. (Adversary Proceeding Cplt. ¶ 12.) Of necessity, Hirsch began discovery proceedings

to determine the identity of Seatrain's insurers.

Travelers, meanwhile, filed a proof of claim against the estate, seeking to collect on the $1 million 1981 Claim allowed by the bankruptcy court in the prior Chapter 11 proceeding. The parties do not dispute the validity of this Claim, but they dispute its legal impact on the instant motion to withdraw the reference.

On November 16, 1994, Hirsch filed Seatrain's adversary proceeding against its major insurers, seeking a declaration of Seatrain's rights under its insurance policies and a turnover of estate property in the form of insurance proceeds. Jurisdiction was predicated on § 542 of the Bankruptcy Code, which provides for the recovery of property to the estate. 11 U.S.C. § 542. The Complaint further alleged that the proceeding was core and sought coverage and defense for both current and future personal injury claims against the estate.[3]

Travelers denied liability, asserted affirmative defenses, demanded a jury trial, and filed a motion in bankruptcy court for permissive abstention under 28 U.S.C. § 1334(c)(1).

The abstention motion was heard on May 23, 1995, before Bankruptcy Judge Francis Conrad. Judge Conrad denied the motion on several grounds, including his findings that (1) no state court litigation on the matter was pending; (2) the bankruptcy court had jurisdiction over the proceeding; (3) the bankruptcy judges in the Southern District of New York possessed ample expertise in resolving insurance liability disputes under state law; and (4) efficiency favored non-abstention because Travelers had already filed a proof of claim.[4] (Tr. of Hearing be-

---

3. "Plaintiff believes that there are hundreds, if not thousands, of asbestos injury claimants with potential claims against the Seatrain estate." (Pl.'s Mem. of Law in Opp. to Travelers' Motion at 5.)

4. Travelers had filed a contemporaneous motion to withdraw its proof of claim, which Judge Conrad denied at the May 23, 1995 hearing on the following ground:

What I see here, it reminds me of—how to describe this—someone who goes into the burrow of a skunk looking for something—and bankruptcy sometimes is not necessarily the

cleanest process in the world—they go into the skunk's hole thinking it's empty ... [and] they find that the skunk is still there and they get sprayed, and it's the same equivalent of filing a proof of claim.

You file a proof of claim hoping that you will get something and then all of a sudden you realize that you may get more than you desire.
. . . .
Well, once you get sprayed by the skunk, the only way you can get rid of it is usually with tomato juice, and in this case I have no tomato juice to give to Travelers. What I have is to give them equity.

fore Judge Conrad at 13–16.) On the jurisdictional issue, Judge Conrad declined to rule on whether the proceeding was core or non-core,[5] but opined that the proceeding was core. "I think it's clear law in this circuit that ... insurance policies are property of the estate," he observed. "If they are property of the estate, they clearly come under the core jurisdiction of this Court to administer claims and to administer the assets of the estate." (*Id.* at 16–17.)

Judge Conrad's Order denying the abstention motion was signed and docketed on June 16, 1995. Under Fed.R.Bankr.P. 8002(a), Travelers had the right to appeal this Order within 10 days of its entry. Travelers inadvertently missed the filing deadline, and on July 10, 1995, brought an Order to Show Cause in the bankruptcy court seeking to extend the appeal period. In the interim, the adversary proceeding had been transferred to Judge Cornelius Blackshear, who was on vacation, and the Order to Show Cause was reassigned to Judge Jeffry Gallet. Judge Gallet declined to extend Travelers' time to appeal, holding that Travelers had only itself to blame for its oversight. (Tr. of Hearing before Judge Gallet *passim.*)

Travelers promptly appealed the Orders of both Judge Conrad and Judge Gallet to this Court. I consolidated these appeals with Travelers' motion to withdraw the reference.

The Pennsylvania Defendants entered the case in August, 1995, when Hirsch on behalf of Seatrain filed an Amended Complaint in the adversary proceeding naming them as defendants. The Pennsylvania Defendants denied liability, asserted affirmative defenses, demanded a jury trial and moved for abstention and withdrawal of the reference.

At a bankruptcy court hearing on September 19, 1995, Judge Blackshear ruled that the adversary proceeding is non-core. (Tr. of Hearing before Judge Blackshear at 4–7.) Although counsel for the parties did not apprise Judge Blackshear of Judge Conrad's earlier comments on the core/non-core issue, (*see id.* at 5), these comments would not have

(Tr. of Hearing before Judge Conrad at 6–7.)

**5.** Judge Conrad held that the bankruptcy court had jurisdiction in either case; if the proceeding

bound Judge Blackshear because they were not made in the form of a final ruling. Judge Blackshear held that: "It seems to me instead of wasting paper, I have already made a determination that it's a non-core matter.... Any matter that arose pre-petition has to be designated as non-core." (*Id.* at 6–7.)

### DISCUSSION

#### A. The Motion to Withdraw the Reference

■ A district court may withdraw the reference of any case "for cause shown." 28 U.S.C. § 157(d). The Second Circuit has set forth a number of factors to be used in evaluating "cause," including whether the proceeding is core or non-core, whether it is legal or equitable, and "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1101 (2d Cir. 1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994); *see also In re Kenai Corp.,* 136 B.R. 59, 61 (S.D.N.Y. 1992) (Wood, J.) (factors to be examined include whether action is core or non-core and issues of "(1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping, (4) economical use of debtors' and creditors['] resources, (5) expediting the bankruptcy process, and (6) the presence of a jury demand").

■ A district court considering whether to withdraw a reference must first decide whether the proceeding is core or non-core, "since it is upon this issue that questions of efficiency and uniformity will turn." *Orion,* 4 F.3d at 1101. In this case, because Judge Blackshear has ruled that the proceeding is non-core, I review his conclusion of law *de novo.*

#### i. Core or Non–Core

■ Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, the bankruptcy courts have jurisdiction to

was not core, he stated, it was a related non-core matter. (*Id.* at 15–16.)

hear both core and non-core matters.[6] 28 U.S.C. § 157. The sole relevance of the core/non-core distinction is the scope of the bankruptcy court's authority, particularly with regard to the jury trial demanded by defendants. When adjudicating core matters, the bankruptcy court may issue final orders and judgments, 28 U.S.C. § 157(b)(1), and may conduct jury trials, *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402 (2d Cir.), *vacated and remanded*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated on remand*, 924 F.2d 36 (2d Cir.1991). In non-core but related matters, the bankruptcy court has more limited powers. It may not issue final orders and judgments without the consent of the parties; rather, it must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). Further, it may not hold a jury trial in a non-core proceeding. *Orion*, 4 F.3d at 1101.

■ Defendants contend that the instant matter is a "garden-variety insurance coverage dispute" that must be classified as non-core. (Travelers' Reply Mem. at 6.) Defen-

dants' argument, however, is too simplistic and I disagree with their analysis and conclusions concerning the issues in this case.[7]

Defendants rely on an august line of cases beginning with *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*), the landmark opinion that set out the limits of bankruptcy court jurisdiction. In *Marathon* a Supreme Court plurality ruled that a common law breach of contract action, based on a pre-petition contract and filed against a non-party to the bankruptcy case, could be adjudicated only in an Article III court. *Id.* at 70–71, 102 S.Ct. at 2871–72. Writing for the plurality, Justice Brennan stated that disputes concerning state-law private rights, "such as the right to recover contract damages," could not be relegated to Article I courts without violating constitutional principles. *Id.* at 71, 102 S.Ct. at 2871–72. Defendants rely heavily on this holding and on the Second Circuit's more recent decision in *Orion* that a pre-petition claim involving a pre-petition movie licensing

---

6. The statute defines "core" as any proceeding "arising under title 11" or "arising in a case under title 11." 28 U.S.C. § 157(b)(1). Title 11 refers to title 11 of the U.S. Code, which contains all substantive bankruptcy law and is otherwise known as the Bankruptcy Code. Section 157 also provides a non-exclusive list of matters considered to be core. 28 U.S.C. § 157(b)(2). The statute does not define "non-core" except to say that such a matter must be "otherwise related" to a bankruptcy case. 28 U.S.C. § 157(c)(1).

7. I also disagree with two of plaintiff's arguments in support of core jurisdiction, which merit only brief discussion. The adversary proceeding was initially styled as a turnover proceeding, seeking the "insurance proceeds" as the property to be turned over to the estate. (Adv.Proc.Cplt. ¶ 3.) The instant matter is not a turnover proceeding. A turnover action applies only to property that belongs to the estate. *See, e.g., U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1471 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). In this case, defendants vigorously dispute their obligation to pay insurance proceeds. "It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." *Id.* at 1472; *see also In re J.T. Moran Financial Corp.*, 124 B.R. 931, 938 (S.D.N.Y.1991) (action to collect disputed debt is not turnover proceeding); *In re Pied Piper*

*Casuals, Inc.*, 65 B.R. 780, 781 (S.D.N.Y.1986) (action to compel payment under disputed insurance policy is not turnover proceeding); *In re Blue Point Carpet, Inc.*, 86 B.R. 327, 328 (Bankr. E.D.N.Y.1988) (Where "bona fide dispute" exists over insurance contract liability, debtor's breach of contract action "cannot be viewed as a turnover proceeding").

Similarly, Travelers' proof of claim against the estate does not render this matter core. A debtor's adversary proceeding against a creditor is a core matter only when it arises out of the same transaction as the proof of claim—functioning, in essence, as a counterclaim to it. *See Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (bankruptcy court has jurisdiction to decide debtor's counterclaims against creditor when counterclaims arise out of "same transaction" as creditor's proof of claim); *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir.1995) (adversary proceeding is core when it raises objection to creditor's proof of claim); *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389–90 (2d Cir.1990) (same). Here, the Trustee does not contest Travelers' proof of claim, which stems from Seatrain's previous bankruptcy case under Chapter 11 and relates to a stipulated amount of unpaid insurance premiums. The instant adversary proceeding raises unrelated issues concerning the scope of coverage and thus cannot be construed as a counterclaim to Travelers' proof of claim.

agreement was a non-core proceeding. *Orion,* 4 F.3d at 1102.

The Second Circuit, however, has significantly narrowed the reach of *Marathon* and has stated that bankruptcy jurisdiction must be construed as broadly as possible within constitutional limits. *In re Best Products Co.,* 68 F.3d 26, 31 (2d Cir.1995) (*Marathon* holding is "a narrow one"); *Ben Cooper,* 896 F.2d at 1398 (bankruptcy jurisdiction must be "construed as broadly as possible within the constitutional constraints of *Marathon*"); *accord In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987) (Breyer, J.) (congressional sponsors of 28 U.S.C. § 157 "repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings" and "used arguments strongly suggesting that they were pressing the notion [of core jurisdiction] to its constitutional bounds").

In addition, *Marathon* and *Orion* are distinguishable on their facts from the instant case. *Marathon* and *Orion* involved prepetition causes of action,[8] whereas the instant proceeding involves a post-petition claim. This distinction is crucial. Courts in this circuit have held that post-petition causes of action give rise to core proceedings. The Second Circuit first addressed this issue in *Ben Cooper,* which, unlike the case here, involved an insurance policy entered into post-petition.[9] But other courts have held that the hybrid case, involving a post-petition cause of action arising under a pre-petition contract, is governed by the analysis laid out in *Ben Cooper* and *Arnold Print Works.* "[T]he time the cause of action arose, rather than the date a contract was entered, is most directly relevant" to the core/non-core determination. *In re Century Brass Products,*

*Inc.,* 1992 WL 22191 at *2–3 (D.Conn.1992) (Cabranes, J.) (post-petition claim under pre-petition contract "concerns the administration of the estate and is a 'core' proceeding pursuant to § 157(b)(2)(A)"); *accord Valley Forge Plaza Assocs. v. Fireman's Fund Ins. Companies,* 107 B.R. 514, 518 (E.D.Pa.1989) (same).

The case at bar, I find, is just such a hybrid. The insurance policies at issue here were executed pre-petition, but the estate's cause of action accrued post-petition when the defendants refused the estate's demand for defense and indemnification. I hold, therefore, that this is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *Cf. Ben Cooper,* 896 F.2d at 1400 ("the timing of a dispute may render it uniquely a bankruptcy case").

■ Defendants ignore *Ben Cooper* and *Century Brass* and contend that plaintiff's claim actually arose pre-petition. This contention, however, is based on a misunderstanding of when a cause of action for insurance coverage accrues. Although defendants are correct that the third-party asbestos claims were filed against Seatrain pre-petition, it does not follow that Seatrain acquired a contract-based cause of action against defendants at that time. Under New York law, for example, absent a different contractual arrangement which is not alleged here, a cause of action for insurance coverage and defense arises when the insured party demands coverage and is refused. *Continental Casualty Co. v. Stronghold Ins. Co., Ltd.,* 77 F.3d 16 (2d Cir.1996) (citations omitted). The timing of the third-party tort claims is therefore irrelevant. Because in this case both the demand and the refusal occurred

---

8. The debtors in *Marathon* and *Orion* sought damages for breaches of contract occurring pre-petition. In *Marathon,* the pre-petition timing of the cause of action is most clearly set forth in the district court's opinion. *See Marathon Pipeline Co. v. Northern Pipeline Construction Co.,* 12 B.R. 946, 947 (D.Minn.1981), *aff'd,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Orion,* the debtor sued for anticipatory breach of contract which occurred two months before the petition was filed. 4 F.3d at 1097.

9. The court held: "We read *Marathon* to apply to claims arising pre-petition, and decline to apply

that ruling to claims involving contracts entered into post-petition." *Ben Cooper,* 896 F.2d at 1400; *accord, Arnold Print Works,* 815 F.2d at 168–71. The court reasoned that post-petition contracts with a debtor-in-possession are central to the estate administration process from the date they are signed; therefore, the adjudication of claims arising from such contracts are also "an essential part of administering the estate" under § 157(b)(2)(A). *Id.* at 1399–1400. Section 157(b)(2)(A) designates as core all "matters concerning the administration of the estate."

post-petition, Seatrain's cause of action necessarily arose post-petition. Defendants' affirmative defenses, which include statute of limitations and late notice claims, are not vitiated in the slightest by this finding. These defenses will still be available in the bankruptcy proceedings, and to the extent Seatrain is found to have improperly delayed a demand for coverage, or to have violated any other contract provision, Seatrain's claims for coverage will be rejected.

In reaching my conclusion that this proceeding is core, I draw additional support from *In re St. Clare's Hosp. and Health Center*, 934 F.2d 15 (2d Cir.1991), in which the Second Circuit held that a declaratory judgment action to determine a debtor's rights under its insurance policies was a core proceeding. *St. Clare's* involved a pre-petition insurance contract, a post-petition third-party claim against the debtor, and a post-petition demand by the debtor for coverage. The Second Circuit held that the debtor's insurance policies constituted property of the estate and that the determination of rights under the policies was essential to the administration of the estate under § 157(b)(2)(A). *Id.* at 18; *see also MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 92 (2d Cir.) ("[A] debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction"), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *accord, Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir.1989) ("A policy of insurance is an asset of the estate, and a request to determine its validity with respect to the debtor is a 'core proceeding' over which a bankruptcy judge has jurisdiction.").

*St. Clare's* has been followed by two lower court cases with facts strikingly similar to the facts before me. In both cases, the debtor was a shipping line beset by asbestos claims on the one hand and non-paying insurance companies on the other. In both cases, the court held that the debtor's post-petition declaratory judgment action against its pre-petition insurers was a core proceeding under § 157(b)(2)(A). *In re Prudential Lines, Inc.*, 170 B.R. 222, 229 (S.D.N.Y.1994), *ap-*peal dismissed, 59 F.3d 327 (2d Cir.1995); *In re U.S. Lines, Inc.*, 169 B.R. 804, 821 (Bankr. S.D.N.Y.1994). Both courts, moreover, reasoned that (1) the insurance policies were property of the estate, (2) the asbestosis claimants constituted a large class of creditors of the estate, and (3) the determination of coverage was therefore essential to the estate's administration. *U.S. Lines*, 169 B.R. at 820–21 (insurance policies constituted "property of the estate earmarked for distribution to a major class of claimants"); *Prudential Lines*, 170 B.R. at 229 (same) (citations omitted). Neither court relied on the analysis which informs my decision; indeed, the court in *Prudential Lines* did not even mention when the debtor's contract cause of action arose. The court in *U.S. Lines* did, however, emphasize the post-petition timing of the debtor's breach of contract claim. 169 B.R. at 816–18.

Defendants' attempt to distinguish the *St. Clare's* line of cases is unavailing. As noted *supra*, defendants are incorrect in their view that Seatrain's cause of action arose prepetition. They further err by contending that *St. Clare's* and its progeny apply only to Chapter 11 reorganization proceedings. The court in *St. Clare's* did not mention Chapter 11 as a ground for decision. Although the courts in *U.S. Lines* and *Prudential Lines* acknowledged the importance of resolving insurance disputes affecting a debtor's reorganization, neither court expressly limited its holding to Chapter 11 cases. I see no reason to create such a limitation here. The clarification of a debtor's rights under its insurance policies is as relevant to the administration of a Chapter 7 liquidation proceeding as it is to a Chapter 11 reorganization plan, particularly when, as here, personal injury claimants constitute a large class of creditors. Moreover, the distinction between core and non-core jurisdiction rests on a constitutional foundation, as the Supreme Court explained at length in *Marathon* and as Congress acknowledged when it enacted 28 U.S.C. § 157. Defendants offer no constitutional basis for concluding that the core jurisdiction of the bankruptcy court is different on this issue in Chapter 11 cases than in Chapter 7 cases.[10]

10. I will not reach defendants' argument that

*Prudential Lines* was wrongly decided because I

Defendants cite myriad other cases in support of non-core jurisdiction, but these cases do not conflict with my conclusion. For example, in *In re Pied Piper Casuals, Inc.*, 65 B.R. 780 (S.D.N.Y.1986), core jurisdiction was denied because the debtor had mistakenly styled its action as a "turnover proceeding" and had provided no other basis for core jurisdiction. In *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y.1991), core jurisdiction was denied because the debtor had already sued its insurers in state court and the district court chose to honor the debtor's choice of forum. In *In re Nationwide Roofing & Sheet Metal, Inc.*, 130 B.R. 768 (Bankr.S.D.Ohio 1991), the court denied core jurisdiction because the debtor's claims arose pre-petition. In *In re Amatex Corp.*, 107 B.R. 856 (E.D.Pa.1989), aff'd, 908 F.2d 961 (3d Cir.1990), it was the debtor who requested a finding of non-core jurisdiction, and the court agreed. The holding of *In re Ramex Int'l, Inc.*, 91 B.R. 313 (E.D.Pa.1988), was based on the Fifth Circuit's view of core jurisdiction, which this circuit has expressly disavowed. *See Ben Cooper*, 896 F.2d at 1400 (declining to adopt definition of core jurisdiction set forth in *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987)).

In summary, I find that *Marathon* and *Orion* are distinguishable from the instant case and that the *St. Clare's* line of cases, while worthy of note, does not inform my decision. I conclude that the instant adversary proceeding is core under the *Ben Cooper* analysis because plaintiff's cause of action arose after the bankruptcy petition was filed.

*ii. Other Factors*

■ My finding of core jurisdiction favors leaving this adversary proceeding in the bankruptcy court. The other factors relevant to withdrawal of a reference support the same conclusion. Three bankruptcy judges have already presided over the opening skirmishes in this proceeding. Judicial economy, efficiency, and uniformity in bankruptcy administration will be promoted by leaving this case where it is, particularly considering that

decide this case under a different analysis than

110 tort claims have already been filed nationally and that more may be brought in the future. A jury trial, should it come to that, can be conducted in the bankruptcy court. *See Ben Cooper*, 896 F.2d at 1403 (bankruptcy court has authority to hold jury trial in core proceeding). In short, I agree with Judge Conrad's reasoning, expressed in the context of his ruling on the abstention motion, that the bankruptcy court is the proper forum for this litigation. No state court litigation on the matter is pending, the bankruptcy court has core jurisdiction, and the bankruptcy judges in this district are seasoned veterans in mass tort litigation and insurance coverage disputes. For the foregoing reasons, I hold that withdrawal of the reference is unwarranted.

*B. Travelers' Appeals*

Defendant Travelers appeals two bankruptcy court orders: (1) an appeal of Judge Conrad's decision not to abstain in favor of state court jurisdiction, and (2) an appeal of Judge Gallet's decision not to extend Travelers' time to appeal Judge Conrad's ruling.

■ I first address the appeal of Judge Gallet's June 16, 1995 Order, which Travelers has timely filed. The issue before Judge Gallet was whether Travelers had shown "excusable neglect" in the late filing of its appeal. Travelers contends that Judge Gallet abused his discretion by adopting an overly strict interpretation of "excusable neglect" and by failing to consider certain equitable factors. I find that Judge Gallet did not abuse his discretion and that he applied the appropriate law.

■ Decisions involving excusable neglect are reviewed under an "abuse of discretion" standard. *See, e.g., In re Au Coton, Inc.*, 171 B.R. 16, 18 (S.D.N.Y.1994); *see also Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 502 (2d Cir.1994). As Travelers concedes, "[t]he sole question here is whether the Bankruptcy Court abused its discretion" in concluding that excusable ne-

that used by Judge Haight in *Prudential Lines.*

glect did not justify Travelers' late filing.[11] (Travelers' Brief at 8.)

In his written opinion, Judge Gallet noted that the standard for excusable neglect is governed by the Supreme Court's ruling in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). (Judge Gallet's Decision on Travelers' Motion to Extend its Time to Appeal at 3.) *Pioneer*, which involved a late-filed proof of claim in a bankruptcy case, applies to myriad types of late filings. *See, e.g., U.S. v. Hooper*, 9 F.3d 257, 258 (2d Cir.1993) (*Pioneer* governs whether "excusable neglect" justifies late notice of appeal). In *Pioneer*, the Court held that a determination of whether the neglect is excusable "is at bottom an equitable one," which should take into account "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. at 1498. The Court also observed that "excusable neglect" may justify late filings "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388, 113 S.Ct. at 1495. The *Pioneer* court found the creditor's late filing excusable because the bankruptcy court had failed to provide clear notice to creditors of the deadline for filing proofs of claim. The form of notice, the Court held, was "outside the ordinary course in bankruptcy cases" because it had appeared in a "peculiar and inconspicuous" spot on a notice to creditors and left a "dramatic ambiguity" about its significance. *Id.* at 398, 113 S.Ct. at 1499–1500.

In the case at bar, Judge Gallet found Travelers' explanation less worthy of sympathy. The undisputed events are as follows: At the May 23, 1995 hearing, Judge Conrad denied Travelers' abstention motion from the bench and directed Trustee's counsel to prepare an order reflecting his ruling. After the hearing, Travelers' counsel asked Trustee's counsel to send a draft of the order to Travelers before submitting it to Judge Conrad. Trustee's counsel agreed to do so. However, Travelers never received a draft order, and it remained unaware that the order had been signed and entered until it received a notice of entry from the bankruptcy court, by which time the 10–day appeal period had passed.

In arguing its motion before Judge Gallet, Travelers blamed its predicament on its adversary and the bankruptcy court, contending that under Local Bankruptcy Rule 17 the Trustee was required to allow Travelers to preview the order before it was submitted to Judge Conrad. Judge Gallet disagreed. Judge Gallet found that advance notice to Travelers was not required under Rule 17 because Judge Conrad had not directed that the order be "settled"—a term of art describing a proposed court order to which the opposing party is entitled to object. Instead, Judge Gallet found that Judge Conrad had ruled dispositively from the bench and had merely requested that the proposed order reflect his ruling. Judge Gallet further observed that "Travelers' counsel was present in court on the day of the hearing and was aware of Judge Conrad's decision.... Travelers could have appealed Judge Conrad's decision at any point after it was announced from the bench." (Judge Gallet's Decision on Travelers' Motion to Extend its Time to Appeal at 6.)

I find that Judge Gallet did not abuse his discretion in refusing to extend Travelers' time to appeal. The factors present in *Pioneer* simply do not exist here. There was no "dramatic ambiguity" in the proceedings that could have confused Travelers' counsel. Judge Conrad ruled from the bench as follows:

> THE COURT: I think for all of those reasons, I have to deny your request for discretionary abstention. I will "So Order" the record and you

---

11. Bankruptcy Rule 8002(c) provides that a bankruptcy judge may extend a party's time to appeal if: (1) the request is made within 20 days of the expiration of the appeal period and (2) there is a showing of "excusable neglect." Travelers filed its motion within the 20–day period. Therefore, it was required to make a showing of excusable neglect.

can—the Trustee can prepare an Order. Okay?

(Tr. of Hearing before Judge Conrad at 17–18.) Travelers was in no doubt about the rule governing appeals from bankruptcy court orders. In short, none of the events recited by Travelers was "outside the ordinary course in bankruptcy cases," *Pioneer*, 507 U.S. at 398, 113 S.Ct. at 1499. Thus, I agree with Judge Gallet that the equities do not favor Travelers. Although Judge Gallet was permitted to consider the "inadvertence, mistake, or carelessness" of Travelers' counsel, he was not required to rule in favor of Travelers simply because it had shown inadvertence. The "reason for the delay, including whether it was within the reasonable control of the movant," *id.* at 395, 113 S.Ct. at 1498, weighs against Travelers; in addition, the debtor will be prejudiced by the expense of rearguing the motion to abstain.

Because I find that Judge Gallet did not abuse his discretion, I conclude that Travelers' appeal of Judge Conrad's Order is untimely filed; therefore, I need not reach the merits of Judge Conrad's decision not to abstain.

### CONCLUSION

In summary, Travelers' motion to withdraw the reference is denied because I find that the instant adversary proceeding is a core matter pertaining to the administration of the estate. Travelers' appeal of Judge Gallet's Order is denied because I conclude that Judge Gallet did not abuse his discretion in refusing to extend the appeal period, and Travelers' appeal of Judge Conrad's Order is denied as being untimely filed.

**SO ORDERED.**