In re UNITED STATES LINES, INC. and United States Lines (S.A.) Inc. f/k/a Moore McCormack Lines, Inc., Debtors

UNITED STATES LINES, INC. and United States Lines (S.A.) Inc. Reorganization Trust, Plaintiffs–Appellees,

Asbestosis Claimants, Plaintiff–Intervenors–Appellees,

v.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., West of England Owners Mutual Protection and Indemnity Association, Inc., Continental Insurance Corporation, The United Kingdom Mutual Steamship Assurance Association (Bermuda) Limited, Assuranceforeningen Skuld, Liverpool & London Mutual Steamship Protection and Indemnity Association Limited, Marine Officers of America Corp., and The Travelers Insurance Company, Defendants–Appellants.

No. 95 Civ. 3175(SHS), 95 Civ. 3177(SHS), 95 Civ. 3179(SHS), 95 Civ., 3187(SHS), 95 Civ. 3189(SHS).
Bankruptcy Nos. 86 B 12240 (CB), 86 B 12241 (CB).
Adversary No. 93–8004A.

United States District Court, S.D. New York.

Dec. 4, 1997.

See also 199 B.R. 465.

**6**

Morris Stern, Stern, Dubrow & Marcus, Maplewood, NJ, for United States Lines Inc., United States Lines (S.A.), Inc. Reorganization Trust.

John D. Kimball, Jeremy J.O. Harwood, Healy & Baillie, New York, NY, for United Kingdom Mutual Protection & Indemnity Association, Inc., and United Kingdom Mutual Steamship Assur. Assoc. (Bermuda) Ltd.

Leonard Jacques, The Leonard Jacques Law Firm, Detroit, MI, for Asbestiosis Claimants.

Richard H. Brown, Jr., Kirlin, Campbell & Keating, New York City, for American Steamship Owners Mutual Protection & Indemnity Association, Inc.

William R.P. Hogan, Freehill, Hogan & Mahar, New York City, for West of England Owners Mutual Protection & Indemnity Association, Inc.

Helen M. Benzie, Bigham, Englar, Jones & Houston, New York City, for Continental Insurance Corporation.

George W. Sullivan, Lilly Sullivan Purcell Barkan & Junge, P.C., New York City, for Assuranceforeningen Skuld.

Marshall P. Keating, Kirlin Campbell & Keating, New York City, for Liverpool & London Mutual Steamship Protection & Indemnity Association Limited.

Alexander F. Vitale, Freehill, Hogan & Mahar, New York City, for West of England Ship Owners Mutual Insurance Association (Luxembourg) in No. 95 Civ.3177.

Michael Corrigan, Simpson, Thacher & Bartlett, New York City, for Travelers Insurance Company in Nos. 95 Civ. 3177, 95 Civ. 3187, 95 Civ. 3189.

Nick Evan, Simpson Thacher & Bartlett, New York City, for Travelers Insurance Company in No. 95 Civ. 3179.

## OPINION AND ORDER

STEIN, District Judge.

This is an appeal from an order of the bankruptcy court, dated February 28, 1995, entered in accordance with an opinion issued on July 5, 1994, which, among other actions: (1) denied the motion of appellants West of England Owners Mutual Protection and Indemnity Association, Inc. ("West of England"), the United Kingdom Mutual Steamship Assurance Association ("the UK Club"), Limited Assuranceforeningen Skuld ("Skuld"), and Liverpool & London Mutual Steamship Protection and Indemnity Association Limited ("Liverpool and London") (collectively, "the Foreign Clubs"), to stay, pending arbitration, adversary proceedings

brought by debtors, appellees United States Lines, Inc. and United States Lines (S.A.), Inc. Reorganization Trust ("the Trust"); (2) denied appellants' motions for a determination that the adversary proceeding is a "non-core" proceeding pursuant to 28 U.S.C. § 157; (3) denied appellants' motion for summary judgment for lack of a justiciable case or controversy (4) sua sponte granted summary judgment to appellee on the question of when insurance coverage is triggered pursuant to the insurance policies at issue; and (5) denied appellants' motions for summary judgment on appellee's claims for punitive damages and attorneys' fees on its claim pursuant to N.Y.Gen.Bus.Law § 349.

In an order dated August 16, 1996, this Court decided that, in addition to exercising jurisdiction over the Foreign Clubs' appeals as of right of the bankruptcy court's order denying a stay of the proceedings pending arbitration, it would exercise pendent appellate jurisdiction over the bankruptcy court's determination that the adversary proceedings at issue were "core" proceedings, since resolution of the "core/non-core" issue is "inextricably intertwined" with resolution of the arbitrability question. *See In re United States Lines, Inc.*, 199 B.R. 465, 475 (S.D.N.Y.1996). In that order, this Court also determined that "both efficiency and fairness dictate that the Court possesses pendent party appellate jurisdiction" over the appeal by all other defendants of the "core/non-core" issue, since the Court's determination of that issue will become the law of the case, binding on all parties to the action. *Id.* at 476 (citations omitted).

For the reasons that follow, the Court now concludes that the bankruptcy court erred in determining that the adversary proceedings before it were "core" proceedings. The Court also concludes that in the context of this non-core adversary proceeding brought by the Trustee, the Bankruptcy Code does not conflict with the Federal Arbitration Act

("FAA") so as to permit the bankruptcy court discretion to deny enforcement of arbitration clauses at issue in this case. Accordingly, the Court will reverse the bankruptcy court with respect to these two determinations and remand for further proceedings consistent with this order.

## BACKGROUND

Most of the facts pertinent to this appeal are set forth in the extensive opinion of the bankruptcy court, *see In re United States Lines, Inc.*, 169 B.R. 804, 809–11 (Bankr. S.D.N.Y.1994), and in this Court's August 16, 1996 order, *see In re United States Lines, Inc.*, 199 B.R. at 468–69 (S.D.N.Y.1996); familiarity with each is presumed.

Defendants are various foreign and domestic maritime insurers ("the Clubs") from whom United States Lines, Inc. and United States Lines (S.A.), Inc. (collectively, "Debtors"), had purchased Protection and Indemnity policies ("P & I policies") over the course of some forty years between 1946 and 1986.[1] *See In re United States Lines, Inc.*, 169 B.R. at 809.

On November 24, 1986, Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 101 *et seq.;* 169 B.R. at 810. Debtor's plan ("the Plan") was confirmed on May 16, 1989. *See* 169 B.R. at 810. The Plan transfers Debtors' maritime insurance rights to appellee United States Lines, Inc. and United States Lines (S.A.), Inc. Reorganization Trust ("the Trust") and its Trustee. *See id.* The Plan also authorized the Trustee to resolve disputed personal injury claims, distribute Debtors' assets to claimants, and collect funds for reimbursement of those distributions pursuant to the Debtors' maritime insurance policies, including the P & I policies. *See id.*

---

1. Specifically, there are four domestic defendants and four foreign defendants. The domestic defendants are: American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("American Club"), The Continental Insurance Company ("Continental Insurance"), The Travelers Insurance Company ("Travelers"), and a group of insurers, including The Aetna Casualty and Surety Co., CIGNA, Great American Insurance Co., Hartford Fire Insurance Co., and United States Fire Insurance Co., who are successors-in-interest to the Fulton P & I Underwriting Syndicate ("Fulton Syndicate Survivors"). The Foreign Club defendants, identified above, include: UK Club, Liverpool & London, Skuld, and West of England.

Of all of the Clubs, only the American Club has filed a proof of claim against the Debtors. The American Club filed a proof of claim in July 1988 for unpaid premiums and assessments. *See* Brief of Plaintiff–Appellee United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust ("Plfs' Brief") at 67.

On December 8, 1992, the bankruptcy court entered a stipulation of conditional settlement between the Trust and a group of 106 claimants represented by the law firm of Dickstein, Shapiro, Moran and Oshinsky ("the DSM Claimants"). *See* 169 B.R. at 811. The following month, on January 5, 1993, the Trust initiated this adversary proceeding, seeking a declaration, pursuant to 28 U.S.C. § 2201, of its and the Clubs' respective rights and obligations pursuant to the various P & I policies. *See id.* Asbestos claimants represented by The Maritime Asbestosis Legal Clinic ("MALC") were permitted to intervene as plaintiffs in this proceeding pursuant to Fed.R.Civ.P. 24 and Fed.R.Bankr.P. 7024. They are also plaintiff-appellees and seek declaratory relief identical to that sought by the Trust. *See id.*

Defendants subsequently moved for summary judgment and, as noted, on July 5, 1994, the bankruptcy court issued an opinion denying the motion and sua sponte granting summary judgment to the Trust and the MALC claimants on one issue relating to when coverage was triggered pursuant to applicable P & I policies. *See id.* at 831–32. Relevant to this appeal were the bankruptcy court's holdings that the matter before it was a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), because it is a "matter concerning the administration of the estate" and affects "the adjustment of the debtor-creditor relationship," *id.* at 821, and its finding that, because the proceeding was a core proceeding, it had discretion to deny the Foreign Clubs' motions to compel arbitration. *See id.* at 824–25.

Subsequent to the bankruptcy court's decision, in February of 1995, the parties settled their differences with respect to the DSM Claimants. Accordingly, those claims are no longer a subject of the adversary proceeding. However, the Trustee and MALC still seek a declaration with respect to additional amounts the Trust may have to pay in future settlements of potentially thousands of other MALC-represented claimants. *See* Plfs' Brief at 10.

As noted above, in this Court's August 16, 1996 opinion, the Court determined that it would exercise appellate jurisdiction over two issues that were part of the bankruptcy court's disposition of defendants' summary judgment motions. The two issues are as follows: (1) whether this action by the Trustee seeking a declaration of the respective rights and obligations of all parties pursuant to maritime P & I insurance contracts entered into pre-petition is a "core" or "non-core" proceeding pursuant to 28 U.S.C. § 157 of the Bankruptcy Code; and (2) whether the bankruptcy court correctly found it had discretion to deny the Foreign Clubs' request for a stay in order to enforce arbitration provisions in their insurance contracts.

## DISCUSSION

### I. *Core or Non–Core Proceeding*

■ Defendants contend that the bankruptcy court erred in concluding that the Trust's declaratory judgment action constituted a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and assert that, at most, the proceeding is a non-core, "related to" proceeding pursuant to 28 U.S.C. § 157(c)(1). A bankruptcy court's conclusion that a proceeding is core pursuant to 28 U.S.C. § 157(b) is a question of law which this Court reviews *de novo. See In re Burger Boys, Inc.*, 183 B.R. 682, 685 (S.D.N.Y. 1994); *Brunner v. New York Higher Educ. Servs.*, 831 F.2d 395, 396 (2d Cir.1987).

In opposing the bankruptcy court's finding on this issue, defendants rely principally on the line of cases beginning with *Northern Pipeline· v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the seminal Supreme Court case outlining the limits of bankruptcy court jurisdiction. In *Marathon*, the Court found unconstitutional a congressional grant of jurisdiction to bankruptcy courts, via a provision of the Bankruptcy Act of 1978, which ostensibly provided jurisdiction "over all 'civil proceedings arising under ... or aris-

ing in or *related to* cases under title 11.' " *Id.* at 54, 102 S.Ct. at 2862 (emphasis in original) (quoting 28 U.S.C. § 1481 (Supp. IV 1980)). In that case, the underlying cause of action was a state breach-of-contract claim, which arose before Northern Pipeline (the debtor) petitioned the bankruptcy court for Chapter 11 reorganization. The bankruptcy court exercised jurisdiction over the claim because the debtor did not initiate the action until after it filed a Chapter 11 petition, and because the terms of the 1978 Act allowed the exercise of jurisdiction over such *related* claims. However, the Supreme Court ruled that Congress had overstepped its bounds and could not constitutionally empower a non-Article III bankruptcy court to adjudicate and issue final orders in a state breach-of-contract action, based upon a pre-petition contract, brought by a debtor against a defendant who was not a party to the bankruptcy case. *See id.* at 71, 102 S.Ct. at 2871–72; *see also Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985).

■ Congress enacted 28 U.S.C. § 157 largely as a response to *Marathon. See In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir.1993); *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398 (2d Cir.) (*Ben Cooper I* ), *vacated and remanded*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated on remand, In re Ben Cooper, Inc.*, 924 F.2d 36, 38 (2d Cir.) (*Ben Cooper II* ), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). Section 157 classifies matters as either core or non-core proceedings. *See* § 157(b)(1), (c)(1). When adjudicating matters deemed core pursuant to section 157(b)(2), a bankruptcy court may issue final orders and judgments. § 157(b)(1). When adjudicating non-core but related matters, the bankruptcy court may not issue final orders and judgments without the consent of the parties; instead, the court must issue proposed findings of fact and conclusions of law to the district court for *de novo* review. § 157(c)(1). Moreover, the bankruptcy court may not hold a jury trial in a non-core proceeding. *See Orion*, 4 F.3d at 1101.

Although the statute does not define "core," section 157(b)(2) catalogues a nonexclusive list of matters considered to be core. Included in the list are two catchall provisions, each of which was relied upon by the bankruptcy court below. Specifically, the bankruptcy court found that the proceeding involves "matters concerning the administration of the estate," § 157(b)(2)(A), and is a "proceeding affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." § 157(b)(2)(O). The bankruptcy court relied heavily on its finding that the P & I policies at issue are and will continue to be "property of the estate despite confirmation of the Debtors' plan of reorganization and the transfer of the policies to a disbursement trust." 169 B.R. at 820. The bankruptcy court also stressed that it was potentially dealing with the resolution of thousands of asbestos-related tort claims, and that a finding that the proceeding was core was necessary to ensure the "existence and maintenance of a claims allowance process to compensate individuals whose injuries manifest anywhere from ten to forty years following initial exposure." *Id.*

The bankruptcy court recognized that the two provisions upon which it relied, § 157(b)(2)(A) and § 157(b)(2)(O), while potentially extremely broad in scope, must be interpreted in light of *Marathon*'s jurisdictional limitations. *See* 169 B.R. at 817. However, the bankruptcy court's and now appellees' effort to distinguish *Marathon* and its progeny is unavailing.

Appellees attempt to distinguish *Marathon* on its facts, noting that while both this case and *Marathon* involved contracts entered into pre-petition, this case—unlike *Marathon*—involves a cause of action that only arose post-petition. *See Continental Casualty Co. v. Stronghold Ins. Co., Ltd.*, 77 F.3d 16 (2d Cir.1996) (cause of action for insurance coverage arises pursuant to New York law when the insured demands coverage and is refused); *In re Seatrain Lines, Inc.*, 198 B.R. 45, 51 (S.D.N.Y.1996). As such, it is a "hybrid" claim which some district courts in this Circuit have found to be distinguishable from *Marathon*, and properly adjudicable by

bankruptcy courts as core proceedings. *See In re Seatrain Lines.*, 198 B.R. at 51; *In re Century Brass Products, Inc.*, 1992 WL 22191, at 2–3 (D.Conn.1992). Appellees cite, in addition to the aforementioned district court cases, the Second Circuit cases of *Ben Cooper I* and *St. Clare's Hosp. & Health Ctr. v. Insurance Co. of N. Am.*, 934 F.2d 15 (2d Cir.1991), for the proposition that the post-petition timing of the alleged cause of action distinguishes this case from *Marathon*. *See* Plfs' Brief at 43; *Ben Cooper I*, 896 F.2d at 1400; *see also In re Prudential Lines, Inc.*, 170 B.R. 222, 229 (S.D.N.Y.1994) (relying on *St. Clare's Hospital*).

However, importantly, *Ben Cooper I* involved an insurance policy obtained by the debtor *post-petition*, and was thus plainly distinguishable from *Marathon* and from the case at bar. *See Ben Cooper I*, 896 F.2d at 1399. The *Ben Cooper I* court made clear that, since the policies were entered into post-petition, the insurance companies which entered into the contracts "were aware that they were dealing with a debtor-in-possession and that the subject matter of the policy was an asset of the estate." *Id.* Thus, the concern expressed by the Supreme Court in *Marathon* that a nonparty would be involuntarily subjected to having the debtor's state law claim against it decided by an Article I judge was not present. *See In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 706 (2d Cir.1995); *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389 (2d Cir.1990). Here, in stark contrast, each of the Clubs entered into insurance contracts with the Debtors well before Debtors filed for bankruptcy and could not have been aware that they were subjecting themselves to having possible disputes concerning such policies adjudicated by a non-Article III court. For these reasons alone, reliance on *Ben Cooper I* is unavailing.

The facts of *St. Clare's Hospital* are more on point. There, the bankruptcy court, with little analysis, found that a debtor's post-petition suit to enforce debtor's rights under a pre-petition, medical malpractice insurance policy was a core proceeding pursuant to 28 U.S.C. § 157(b)(2). *St. Clare's Hospital*, 934

F.2d at 18. The district court reversed the bankruptcy court, but only on the grounds that the bankruptcy court had erred in rejecting the insurer's affirmative defense of "late notice" of the hospital's claim. *See St. Clare's Hosp. & Health Ctr. v. Insurance Co. of N. Am.*, 1990 WL 210308 at *4, 1990 U.S.Dist. LEXIS 16781, *12. The district court did not address the insurer's argument that the proceeding was non-core. *Id.* at *3, 1990 U.S.Dist. LEXIS 16781 at *7–8. Then, again without comment or analysis, the Second Circuit reversed the district court and affirmed the bankruptcy court "for substantially the reasons set forth in the decision of the bankruptcy court." *St. Clare's Hospital*, 934 F.2d at 16. In short, *St. Clare's Hospital* did not directly address the question of whether a post-petition claim arising out of a pre-petition insurance contract could—consistent with the Supreme Court's decision in *Marathon*—constitute a core proceeding pursuant to 28 U.S.C. § 157.

More importantly, in its most recent decision on point, the *Orion* case, the Second Circuit squarely held that a "breach-of-contract action by a debtor against a party to a prepetition contract, who has filed no claim with the bankruptcy court, is non-core." *Orion*, 4 F.3d at 1102. The *Orion* Court also made clear that section 157(b)(2)(A)—one of the catchall provisions upon which the bankruptcy court below relied—cannot be read so broadly that it creates an exception to *Marathon* that swallows its rule, since all actions by debtors to collect on pre-petition contracts "would be expected to inure to the benefit of the debtor estate and thus 'concern[ ]' its 'administration.'". *Id.* (quoting 28 U.S.C. § 157(b)(2)(A)). Such reasoning also clearly applies to the other catchall relied upon by the bankruptcy court, § 157(b)(2)(O), since any action to collect on a pre-petition contract, such as an insurance policy, would "affect[ ] the liquidation of the assets of the estate." § 157(b)(2)(O). Most importantly, despite the bankruptcy court's claim to the contrary, *Orion*—like the instant case—involved an alleged post-petition breach of a pre-petition contract.[2]

---

2. The bankruptcy court attempted to distinguish

*Orion* on the grounds that the case involved

Thus, with respect to all of the defendants who did not file a proof of claim against the debtor (all of the Clubs except the American Club) both the holding of *Orion* and its reasoning mandate a finding that the adversary proceeding brought by the Trustee is non-core. Moreover, with respect to the American Club, despite the Trust's claims to the contrary, *see* Plfs' Brief at 67, the Trustee's adversary proceeding simply does not arise out of the same transaction as the American Club's proof of claim against the estate for unpaid premiums, and it therefore "cannot be construed as a counterclaim to [the American Club's] proof of claim." *In re Seatrain,* 198 B.R. at 50 n. 7 (citing *Katchen v.. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)). Therefore, the American Club's proof of claim against the estate does not serve as an alternative basis for a finding that the adversary proceedings against the American Club are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(C) ("counterclaims by the estate against persons filing claims against the estate" are core matters).

Accordingly, this Court finds that both *Marathon* and *Orion* dictate that the adversary proceedings at issue in this case be deemed non-core proceedings. The bankruptcy court's finding that the P & I policies at issue continue to exist as property of the estate which may be earmarked by the Trustee for distribution to a potentially large class of claimants, does not lead this Court to modify its conclusion that the adversary proceedings are, at bottom, state law contract claims, arising from pre-petition contracts, which, under both *Marathon* and *Orion* cannot be finally adjudicated by a non-Article III court.

## II. *Arbitration*

The parties disagree about the standard a bankruptcy court should apply when deciding whether or not to enforce arbitration provisions in the context of an adversary proceeding brought by a debtor. The Foreign Clubs contend that the bankruptcy court erred when it concluded that it had discretion to refuse to stay the proceedings in favor of arbitration pursuant to the arbitration provisions in each of the Foreign Club's P & I policies.[3] The Trustee counters that the bankruptcy court did, in fact, have discretion to deny enforcement of the arbitration clauses, regardless of whether the proceeding was core or non-core, and—citing a series of district court cases—contends that in the Second Circuit, at least in the context of bankruptcy proceedings, arbitration is disfavored. *See* Plfs' Brief at 70–72. What standard the bankruptcy court should have employed is a question of law that this Court reviews *de novo.*

Section 2 of the Federal Arbitration Act specifically provides that "a written provision in any Maritime ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

---

"alleged prepetition breach of contract, rather than a postpetition breach." 169 B.R. at 817. This distinction was also cited by the district court in *In re Seatrain. See* 198 B.R. at 51 n. 8 ("In *Orion,* the debtor sued for anticipatory breach of contract which occurred two months before the petition was filed."). However, a brief examination of the chronology in *Orion* makes clear that, as here, the cause of action did not accrue until after the petition for bankruptcy was filed. *Orion* concerned an agreement under which Showtime was to license Orion's films on the condition that, among other things, Orion continue to employ certain executives (the "key man" clause). *Orion,* 4 F.3d at 1097. After management changes at Orion, Showtime sent letters to Orion in October and November 1991, notifying Orion that it was in violation of the "key man" clause. Subsequently, on December 11, 1991, Orion filed for Chapter 11 reorganization.

*Id.* On December 24, 1991—post-petition—Showtime notified Orion that it would cease licensing Orion's films pursuant to the agreement. Finally, in March 1992, Orion filed the adversary proceeding against Showtime, claiming anticipatory breach of their pre-petition contract and seeking declaratory and other relief. *Id.* Given the timing of the events in *Orion,* it is clear that the alleged cause of action for anticipatory breach did not arise until Showtime declared that it was no longer going to license Orion's films pursuant to the agreement; an event that did not occur until post-petition.

3. The relevant provisions are quite similar, and all require that disputes be submitted to arbitration governed by English law. *See* 169 B.R. at 822–23, n. 22.

Section 3 further provides that a court "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, *shall* on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Thus, on its face, Section 3 of the FAA mandates that a bankruptcy court stay adversary proceedings when one party has identified an enforceable arbitration provision relevant to the dispute.[4]

The Supreme Court, in addressing the arbitrability of federal RICO and securities fraud claims brought pursuant to the Securities and Exchange Act of 1934 in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226–27, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987), confirmed the presumption that arbitration provisions are to be enforced pursuant to the FAA, stating:

> The Arbitration Act, standing alone, . . . mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent " 'will be deducible from [the statute's] text or legislative history' or from an inherent conflict between arbitration and the statute's underlying purposes."

(citation omitted). The standard articulated in *McMahon* was reiterated by the Supreme Court two years later, in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989), a case addressing the arbitrability of securities fraud claims brought pursuant to the Securities Act of 1933.

The Debtors, however, argue that there is a "longstanding conflict between federal bankruptcy law and federal arbitration policy," Plfs' Brief at 70 (citing *In re Chas. P. Young Co.*, 111 B.R. 410, 416–17 (Bankr. S.D.N.Y.1990)), and cite pre-*McMahon* the and pre-*Rodriguez* Second Circuit case law for the proposition that bankruptcy court judges have discretion to deny arbitration. *Id.* at 71 (citing *Allegaert v. Perot*, 548 F.2d 432 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977)).

However, this Court finds that, especially in light of the *McMahon*-line of cases, *Allegaert* can no longer bear the presidential weight accorded by Debtors. First, the Second Circuit has recently made clear its view that the FAA "establishes a liberal policy in favor of arbitration as a means to reduce 'the costliness and delays of litigation,' " *Campaniello Imports, Ltd. v. Saporiti Italia*, 117 F.3d 655, 665 (1997) (citations omitted); a policy that is even stronger in the context of international transactions, such as the P & I policies entered into by the parties in this case. *Id.* (citing *Deloitte Noraudit v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1063 (2d Cir.1993); *Int'l Minerals and Resources, S.A. v. Pappas, et al.*, 96 F.3d 586, 592 (2d Cir.1996)).

Second, recent courts addressing the enforceability of arbitration clauses in the bankruptcy context have applied the *McMahon/Rodriguez* framework, asking whether the party seeking to avoid enforcement of otherwise applicable arbitration provisions has demonstrated that arbitration would conflict with the purposes of the Bankruptcy Code, given the nature of the proceeding. *See Insurance Co. of North America v. NGC Settlement Trust & Asbestos Claims Management Corp.*, 118 F.3d 1056, 1065 (5th Cir. 1997); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–62 (3d Cir.1989). While courts have disagreed about how and whether to apply that standard in the context of core proceedings,[5]

---

4. The Foreign Clubs also point out that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201–208, requires enforcement of arbitration clauses in international contracts unless the clause is null and void. Thus, the Foreign Clubs urge, a requirement for English arbitration is enforceable.

*See Aasma v. American S.S. Owners Mut. Prot. & Indem.*, 95 F.3d 400, 405 (6th Cir.1996).

5. *Compare In re Spectrum Info. Technologies, Inc.*, 183 B.R. 360, 363 (Bankr.E.D.N.Y.1995); *In re Sacred Heart Hosp.*, 181 B.R. 195, 202

there is a strong consensus that, in the context of non-core matters, bankruptcy courts are without discretion to deny enforcement of applicable arbitration clauses absent some showing that the text, purpose, or history of the Bankruptcy Code precludes enforcement of arbitration. *See Hays,* at 1156–57; *National Gypsum,* 118 F.3d at 1066. The bankruptcy court below also agreed with this assessment of the case law. *See* 169 B.R. at 823–24.

The Trust now contends that the prospect of piecemeal litigation, resulting from granting a stay pending arbitration, would nullify the fundamental policy expressed throughout the Bankruptcy Code in favor of efficient dispute resolution, and point to a number of specific Code provisions that, according to the Trust, demonstrate that the Code often overrides non-bankruptcy law. *See e.g.,* Plfs' Brief at 31–32. However, having considered all of the Trust's contentions, this Court finds that none of the Bankruptcy Code provisions cited by the Trust evidence congressional intent to preclude enforcement of arbitration in the context of a non-core proceeding brought by the Debtor to enforce pre-petition insurance policies. *See In re Gurga,* 176 B.R. 196, 197, 199 (9th Cir. BAP 1994); *In Matter of Dollar Corporation,* 139 B.R. 192, 194 (Bankr.E.D.Mich.1992). Thus, the Trust has not met its burden of establishing a conflict between the Bankruptcy Code and the FAA that would warrant nonenforcement of the applicable arbitration provisions in this proceeding, and this Court finds that the bankruptcy court erred in denying the Foreign Clubs' motion to stay the adversary proceeding pending arbitration.

### CONCLUSION

Accordingly, this Court finds that the bankruptcy court erred in its determination that the adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O) and in its holding that it had discretion to deny the Foreign Clubs' motions to stay the proceedings pending arbitration. The bankruptcy court's rulings on these two issues are reversed, and the matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.

(Bankr.E.D.Pa.1995), *with National Gypsum,* 118 F.3d at 1067–69; *In re Statewide Realty Co.,* 159 B.R. 719, 722 (Bankr.D.N.J.1993); *see generally,* Mette H. Kurth, *Comment, An Unstoppable Mandate and an Inmovable Policy: The Arbitration Act and the Bankruptcy Code Collide,* 43 U.C.L.A. 999, 1022 (1996) (collecting cases).