In re PAN AM CORPORATION
et al., Debtors.

DELTA AIR LINES, INC., Appellant,

v.

A.I. LEASING II, INC., Air Line Pilots Association, International, Caterair International Corp., Electronic Services International, Inc., IBJ Schroder Bank & Trust Co., International Brotherhood of Teamsters, Midlantic National Bank, MTU Maintenance GMbH, Ernest L. Ransome, III, S.G. Warburg Soditic S.A., Transport Workers Union of America, AFL–CIO, United Technologies Corp., and Anthony Ben Walsh, Appellees.

OFFICIAL COMMITTEE OF UNSE-CURED CREDITORS OF PAN AM CORPORATION AND AFFILIATED DEBTORS, Cross–Appellant,

v.

DELTA AIR LINES, INC.,
Cross–Appellee.

Nos. 91 B 10080 (CB) to 91 B 10087 (CB), 93 Civ. 0461 (RPP), 93 Civ. 0462 (RPP), 93 Civ. 0694 (RPP) and 93 Civ. 0695 (RPP).

United States District Court,
S.D. New York.

Aug. 20, 1993.

Davis, Polk & Wardwell, New York City by Dennis E. Glazer and John J. Clarke, Jr., for appellant/cross-appellee Delta Air Lines, Inc.

Varet, Marcus & Fink, P.C., New York City by Arthur H. Ruegger and Richard Levy, Jr., for cross-appellant Official Committee of Unsecured Creditors of Pan Am Corporation and Affiliated Debtors and for certain appellees.

Wachtell, Lipton, Rosen & Katz, New York City by Amy R. Wolf, for appellee United Technologies Corp.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

These appeals and cross-appeals from rulings of the United States Bankruptcy Court arise out of two separate but related adversary proceedings in the Chapter 11 case of the Pan Am Corporation and its affiliated debtors. For the reasons set forth below, the two appeals initiated by Delta Air Lines, Inc. ("Delta"), are dismissed for lack of appellate jurisdiction, and the two cross-appeals initiated by the Official Committee of Unsecured Creditors of Pan Am Corporation and Affiliated Debtors ("the Committee") and designated by the Committee as "contingent" upon a finding of jurisdiction over Delta's appeals are, accordingly, dismissed.

### BACKGROUND

## I. OVERVIEW

In January 1991, Pan Am Corporation and certain affiliates (collectively, "Pan Am") filed petitions for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.* Despite efforts at reorganization, Pan Am ceased its flight operations on December 4, 1991.

Delta's involvement in the Pan Am reorganization proceedings stems from its purchase, approved by the Bankruptcy Court on August 12, 1991, of certain Pan Am assets, including substantially all of Pan Am's transatlantic route authorities and the business of the Pan Am Shuttle, Inc., in exchange for $416 million in cash and the provision of debtor-in-possession financing and other support for Pan Am's proposed reorganization. In October 1991, Delta, the Committee, and Pan Am entered into an agreement pursuant to which Delta agreed to provide additional debtor-in-possession financing under certain terms and conditions. Whether Delta fulfilled its commitment to Pan Am's reorganization has been the subject of litigation since Pan Am went into liquidation on December 4, 1991.

These appeals and cross-appeals challenge the Bankruptcy Court's disposition of motions to dismiss counterclaims/third-party claims asserted by Delta against the Committee and its individual members in two adversary proceedings involving the issue of Delta's commitment to Pan Am's reorganization plan, *Pan Am Corp. v. Delta Air Lines, Inc.*, Adv.Proc. No. 91–6626A(CB) (hereinafter "the Consolidated Action") and *United States v. Pan Am Corp.*, Adv.Proc. No. 91–6684A(CB) (hereinafter "the CRAF Action").

## II. THE CONSOLIDATED ACTION

Pan Am, the Committee, and the Ad Hoc Committee of Administrative and Priority Creditors of Pan Am Corporation (the "Ad Hoc Committee") instituted "the Consolidated Action" against Delta objecting to claims asserted against the debtors by Delta and seeking, *inter alia*, damages for Delta's "wrongful and unconscionable refusal to provide funding for and sponsor Pan Am's reorganization under obligations incurred on and after August 11, 1991." Consolidated Am.Compl. in Adv.Proc. No. 91–6626A(CB), dated Mar. 6, 1992 ("Consol.Am.Compl."), at ¶ 1. The plaintiffs alleged that Delta's "repudiation of its obligations" resulted in the failure of Pan Am's reorganization efforts and the cessation of Pan Am's flight operations on December 4, 1991. *Id.*

Delta asserted counterclaims against the Committee and its individual members for interference with contract, breach of duty of good faith and fair dealing, contribution, and indemnification. Delta alleged that the Committee and its members, acting in concert, "thrust themselves into the center of the negotiating and contracting process" regarding the sale of Pan Am's assets and "usurped the role of Pan Am as the debtor-in-possession." Delta's First Am. Counterclaims in Adv.Proc. No. 91–6626A(CB), filed June 26, 1992 ("Delta's Counterclaims"), at ¶ 19. Delta further alleged that the Committee and its members engaged "in a course of conduct, consisting of threats, deception, and disruption, that was designed to manipulate Delta, Pan Am, the Bankruptcy Court and the reorganization process, without regard for the prospects of a reorganized Pan Am or the thousands of Pan Am employees whose jobs were at stake, in order to advance their own ends and purposes by improper means," id. at ¶ 32; that such course of conduct was improper and outside of the scope of the Committee's statutory authority, id. at ¶ 42; and that such course of conduct "ultimately had the effect of causing, in whole or in substantial part, Pan Am's inability to continue operations and to reorganize." Id. at ¶ 33.

## III. THE CRAF ACTION

The United States of America, on behalf of the United States Air Force (the "Air Force"), brought an adversary proceeding against Pan Am seeking an order of allowance and determination of priority of the Air Force's claims arising under the CRAF Enhancement Contract (the "CRAF contract") with Pan Am. First Am.Compl. in Adv.Proc. No. 91–6684A(CB), dated July 22, 1992 ("CRAF Am.Compl."), at ¶ 1. The CRAF contract, entered into on or about September 23, 1983, obligated the United States to pay for the modification of various Pan Am aircraft in exchange for Pan Am's obligation to refund part or all of the amounts paid by the government under certain conditions and Pan Am's provision of security for its refund obligations. Id., Exh.A. By agreement dated August 3, 1984, Pan Am granted the Air Force a security interest in certain of its accounts receivable to secure its prompt payment in full of its refund obligations under the CRAF contract. Id.

On March 15, 1991, the Bankruptcy Court entered a Stipulation and Order Authorizing Use of Cash Collateral (the "Cash Collateral Order"), which permitted Pan Am to use its cash collateral, including the receivables in which the Air Force was given a security interest, on the condition that Pan Am maintain the "total collectible value of its pre- and post-Petition Date 'Receivables'" at a certain level. CRAF Am.Compl. at ¶ 12. The Air Force commenced this adversary proceeding alleging that Pan Am breached the Cash Collateral Order and thereby entitled the Air Force to foreclose on its receivables. Id. at ¶ 25.

Pan Am impleaded Delta, demanding judgment in the amount of any judgment obtained against Pan Am by the Air Force arising out of Pan Am's alleged breach of its refund obligations. Pan Am alleged that a letter agreement dated August 11, 1991, containing the terms of Delta's purchase of certain of Pan Am's assets, provided that "Delta will assume responsibility for all existing contingent and non-contingent CRAF claims." Pan Am's Third–Party Compl. in Adv.Proc. No. 91–6684A(CB), dated Feb. 20, 1992 ("Pan Am's Third–Party Compl."), at ¶ 8.

Delta then brought a third-party complaint against the Committee and its individual members. This third-party complaint, containing allegations of improper conduct almost identical to those set forth in Delta's counterclaims against the same parties in the Consolidated Action, sought indemnification or contribution for any judgment obtained against Delta pursuant to Pan Am's third-party complaint. Additional allegations by Delta charged that Pan Am, the Committee, and the Committee's members "were aware of the terms of" an Agreement in Principle executed by Delta and the Air Force and that "Pan Am agreed to perform various actions contemplated by such terms." Delta's First Am.

Third–Party Compl. in Adv.Proc. No. 91–6684A(CB), filed June 26, 1992 ("Delta's Third–Party Compl."), at ¶ 25. By the terms of the Agreement in Principle, Delta agreed to undertake certain obligations to the Air Force and the Air Force agreed "not to pursue any claims against Delta with regard to the CRAF Enhancement Contract." *Id.*

## IV. THE MOTIONS TO DISMISS

The Committee and its members moved before Judge Blackshear of the Bankruptcy Court to dismiss Delta's counterclaims in the Consolidated Action and Delta's third-party claims in the CRAF Action. On November 5, 1992, Judge Blackshear heard argument on the motions to dismiss in both adversary proceedings and ruled from the bench:

> The motion to dismiss the claims against the individual members of the Creditors Committee is granted. The motion to dismiss the counterclaims against the Committee as a whole is denied.... The reason that I granted the motion as far as the members of the Committee is for public policy. The reason I denied the motion because as I read the case and as I read the pleadings that I don't think—not I don't think, I don't believe that a committee has immunity as a public official even though they are appointed by the United States Trustee, so are Trustees on the panel of Trustees as appointed by the United States Trustee and they don't have immunity.

Tr. of Nov. 5, 1992, hearing at 42–3. Judge Blackshear later signed an order for each adversary proceeding dismissing Delta's claims against the individual Committee members "with prejudice" and denying the motion to dismiss Delta's claims against the Committee as a whole "without prejudice to the Committee's right to renew any grounds for dismissal based on claims of privilege and/or immunity after completion of discovery." Orders Granting in Part and Denying in Part the Committee's Motion to Dismiss, dated Dec. 1, 1992 ("Judge Blackshear's Orders").

## V. THE APPEALS

On December 14, 1992, Delta filed a notice of appeal in each of these two adversary proceedings from the portion of Judge Blackshear's Order dismissing Delta's claims against the individual Committee members with prejudice. Each notice of appeal asserted that this portion of Judge Blackshear's Order is final and appealable pursuant to 28 U.S.C. § 158(a), but also stated that "[i]n the event that the Order ... is determined to be interlocutory, the undersigned hereby move for leave to appeal pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8003." Delta's two appeals were consolidated by order of this Court dated February 2, 1993.

The Committee filed two cross-appeals, one from each adversary proceeding, from the portion of Judge Blackshear's Orders denying, without prejudice, its motions to dismiss Delta's claims against the Committee as a whole. The Committee characterizes these cross-appeals as "contingent" in that they "will be pursued at this time only if Delta is permitted to pursue its appeals at this time." Committee's Mem. in Support of its Cross–Appeals, dated Mar. 15, 1993, at 1 n. 1. The cross-appeals were consolidated by order of this Court dated February 2, 1993.

The Committee also moved to dismiss Delta's appeals on the ground that the Orders appealed from do not satisfy the standards for appeal under 28 U.S.C. § 158(a).

### *DISCUSSION*

### *JURISDICTION UNDER 28 U.S.C. § 158(a)*

#### A. Final Judgment, Order, or Decree

■ The district court has jurisdiction "to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges...." 28 U.S.C. § 158(a). Orders in bankruptcy cases may be considered final "if they resolve discrete disputes within the larger case." *In re Fin. News Network, Inc.*, 931 F.2d 217, 220 (2d Cir.1991) (citing *In re*

*Chateaugay Corp.*, 922 F.2d 86, 90 (2d Cir.1990) (hereinafter *"Chateaugay I"*)).

When, however, multiple claims or parties are involved in an action, the finality of an order which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties must also be determined in light of Federal Rule of Civil Procedure 54(b).[1]  Rule 54(b) states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay and upon express direction for the entry of judgment.*  In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b) (emphasis added).

Although Delta concedes that Rule 54(b) certification would be necessary for appellate review of Judge Blackshear's Orders if they occurred outside of the bankruptcy context, it argues that such certification is not necessary to confer finality upon orders adjudicating fewer than all of the claims or the rights and liabilities of fewer than all of the parties in bankruptcy cases. In support of this argument, Delta cites cases from the Seventh Circuit, which "has held on several occasions that Rule 54(b) findings need not necessarily be made to confer 'finality' on such orders in bankruptcy cases." *In re Lissner Corp.*, 98 B.R. 812, 815 (N.D.Ill.1989). The Seventh Cir-

cuit has not established a bright-line rule for determining when Rule 54(b) findings are required in a bankruptcy context; rather, the Court has stated that "[t]he more an adversary proceeding looks like an independent lawsuit, attached to a bankruptcy case only because someone happens to be bankrupt, the more we will insist on adherence to the norms of finality under § 1291 and Rule 54(b)." *In re Morse Elec. Co.*, 805 F.2d 262, 265 (7th Cir.1986).

The law of this Circuit, however, requires "strict compliance with Rule 54(b)" in the bankruptcy context. *In re Chateaugay Corp.*, 928 F.2d 63, 64 (2d Cir.1991) (per curiam) (hereinafter *"Chateaugay II"*).  More specifically, the Second Circuit has held that an order granting partial summary judgment disposing of only one of two pending claims in an adversary proceeding is interlocutory and therefore not appealable as a final order absent compliance with Rule 54(b). *Chateaugay I*, 922 F.2d at 90–91.  In support of this holding, the Court cites *In re Wood & Locker, Inc.*, 868 F.2d 139 (5th Cir.1989), which criticizes the Seventh Circuit's "sliding scale" approach to Rule 54(b) and holds that "given the clear mandate of Bankruptcy Rule 7054, no appeal may be taken from a bankruptcy court order that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all of the parties in an adversary proceeding absent Rule 54(b) certification—even if the order would be considered final if it arose in another context." *Id.* at 144.

Here, Judge Blackshear's Orders dismissed only the third-party claims/counterclaims brought against the Committee members individually; it did not finally adjudicate any of the other claims against any of the other parties to either adversary proceeding.  Because the Bankruptcy Court did not certify its Orders as final pursuant to Rule 54(b) and Bankruptcy Rule 7054, the Orders are not reviewable as final orders.[2]

---

1. Bankruptcy Rule 7054 provides, "Rule 54(a)–(c) F.R.Civ.P. applies in adversary proceedings."

2. Delta submitted to Judge Blackshear proposed orders which included a direction to enter final judgment pursuant to Bankruptcy Rule 7054 with respect to the claims of the Committee's

## B. Bankruptcy Rules 8001(b) and 8003

Bankruptcy Rule 8001(b) provides that "[a]n appeal from an interlocutory judgment, order or decree of a bankruptcy judge as permitted by 28 U.S.C. § 158(a) shall be taken by filing a notice of appeal ... accompanied by a motion for leave to appeal prepared in accordance with Rule 8003...." Under Bankruptcy Rule 8003(a), a motion for leave to appeal must contain "(1) a statement of the facts necessary to an understanding of the questions to be presented by the appeal; (2) a statement of those questions and of the relief sought; (3) a statement of the reasons why an appeal should be granted; and (4) a copy of the judgment, order, or decree complained of and of any opinion or memorandum relating thereto."

The Committee correctly points out that Delta's motion for leave to appeal in each adversary proceeding does not include the first three requirements. Delta did not file a separate motion for leave to appeal in either proceeding. Rather, it filed a notice of appeal from a final order and tacked a short paragraph onto the end stating that in the event Judge Blackshear's Order is determined to be interlocutory instead of final, leave to appeal is requested.

■ Delta asserts that leave to appeal should nevertheless be granted. It relies upon Bankruptcy Rule 8003(c), which provides that "[i]f a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court or the bankruptcy appellate panel may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal."

The Committee argues that Rule 8003(c) does not apply here because Delta filed a motion for leave to appeal, albeit an incomplete one. If Delta had not tacked the short paragraph moving in the alternative for leave to appeal onto its notices of appeal, Rule 8003(c) would clearly have applied. *See, e.g., Escondido Mission Village L.P. v. Best Prods. Co.,* 137 B.R. 114, 115 (S.D.N.Y.1992); *In re Hooker Invs., Inc.,* 122 B.R. 659, 662 (S.D.N.Y.1991). In the absence of any indication that Delta filed its notice of appeal from what it believed to be a final order in bad faith, Bankruptcy Rule 8003 provides no reason why Delta should be penalized for taking the extra precaution of moving in the alternative for leave to appeal. Accordingly, Delta's notice of appeal will be considered as a motion for leave to appeal.

## C. Interlocutory Order or Decree

■ Appeals from interlocutory orders and decrees of the bankruptcy court are permitted "with leave of the court." 28 U.S.C. § 158(a). The parties agree that 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal, provides the standard for determining whether leave to appeal from an interlocutory bankruptcy order should be granted. *See Escondido Mission Village,* 137 B.R. at 116; *Hooker Invs.,* 122 B.R. at 662.

Under section 1292(b), "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978)); *accord Escondido Mission Village,* 137 B.R. at 116 (in context of appeal from order of bankruptcy court). Leave to appeal from an interlocutory order may be granted when (1) such order involves "a controlling question of law" (2) as to which there is "substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Delta is denied leave to appeal Judge Blackshear's Orders dismissing its counterclaims/third-party claims against the Com-

individual members. Without explaining his reasons, Judge Blackshear declined to enter Del-

ta's proposed orders and entered orders proposed by the Committee instead.

mittee's individual members with prejudice because permitting the requested appeals would not "materially advance the ultimate termination of the litigation." In both the Consolidated Action and the CRAF Action, Delta alleges that "[e]ach of the individual Creditors Committee Defendants participated in and/or was aware of and approved all of the actions taken by the Creditors Committee Defendants alleged herein. The Creditors Committee Defendants acted in concert, and are jointly and severally liable to Delta as set forth below." Delta's Counterclaims at ¶ 15; Delta's Third–Party Compl. at ¶ 15. In both actions, Delta makes all of its allegations against the "Creditors Committee Defendants" collectively, which includes both the Committee and all of its individual members.

Based upon these allegations, Delta may be expected to present the same proof as to liability in a trial of the claims against the Committee as a whole as it would present in a trial of the claims against the Committee members individually. If, therefore, the bankruptcy court finds that the conduct of the Committee as a whole did not give rise to liability to Delta, the question of the liability of the Committee's individual members may be moot, and appeal from Judge Blackshear's Orders of dismissal would not be necessary.

Delta asserts that immediate appeal of the dismissal of the counterclaims/third-party claims against the individual Committee members would promote judicial economy by permitting individual members to litigate any individual defenses they may have during the proceedings involving the Committee as a whole, ensuring that the Committee's individual members participate in future discovery proceedings, and preventing inconsistent applications of law.

Delta's assertions do not, however, justify an interlocutory appeal. First, given that the Committee members have not yet asserted any individual defenses, it is not obvious that litigating any such defenses which may eventually be asserted simultaneously with the proceedings against the Committee as a whole would materially advance the ultimate termination of the litigation. Second, Delta does not explain what future discovery proceedings may be expected to cover, or to what extent such proceedings may have to be duplicated assuming its successful appeal from final judgment. On the other hand, a determination adverse to Delta of the counterclaims/third-party claims against the Committee as a whole may moot the counterclaims/third-party claims against the Committee's individual members, in which case the absence of counsel for the individual members from future discovery proceedings may in fact save time and resources.

Finally, immediate appeal is not justified here to prevent inconsistent applications of law. Although questions similar to those presented on these appeals have been raised in actions currently pending before this Court,[3] any inconsistency between this Court's determination of such questions and Judge Blackshear's Orders may be resolved by the bankruptcy court[4] or on appeal from a final order. For this Court, acting in its appellate capacity, to assert jurisdiction over a bankruptcy judge's order merely because of potential inconsistency with one of its own orders, issued in its capacity as trial court and therefore not binding upon the bankruptcy judge, would work an undue intrusion into the bankruptcy court's affairs. Accordingly, Delta's motion for leave to appeal is denied.

### CONCLUSION

For the reasons set forth above, Delta's appeals from the Bankruptcy Court's Orders dated December 1, 1992, are dismissed for lack of appellate jurisdiction. Because the Committee designated its cross-appeals as contingent upon a finding of jurisdiction

---

**3.** *Luedke v. Delta Air Lines, Inc.*, 92 Civ. 1778 (RPP); *Beckett v. Delta Air Lines, Inc.*, 92 Civ. 6725 (RPP), 1993 WL 331187.

**4.** As previously noted, under Fed.R.Civ.P. 54(b), the Orders at issue are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

over Delta's appeals, the Committee's cross-appeals are also dismissed.

IT IS SO ORDERED.