**In re UNITED STATES LINES, INC. and United States Lines (S.A.) Inc. f/k/a Moore McCormack Lines, Inc., Debtors.**

**UNITED STATES LINES, INC. and United States Lines (S.A.) Inc. Reorganization Trust, Plaintiffs–Appellees,**

**Asbestosis Claimants, Plaintiffs–Intervenors–Appellees,**

**v.**

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., West of England Owners Mutual Protection and Indemnity Association, Inc., Continental Insurance Corporation, The**

**United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited, Assuranceforeningen Skuld, Liverpool & London Mutual Steamship Protection and Indemnity Association Limited, Marine Officers of America Corp., and The Travelers Insurance Company, Defendants–Appellants.**

Nos. 86 B 12240 (CB), 86 B 12241 (CB), 95 Civ. 3175 (SHS), 95 Civ. 3177 (SHS), 95 Civ. 3179 (SHS), 95 Civ. 3187 (SHS), and 95 Civ. 3189 (SHS).

Adv. No. 93–8004A.

United States District Court, S.D. New York.

Aug. 19, 1996.

Morris Stern, Stern, Dubrow & Marcus, Maplewood, NJ, for United States Lines Inc., United States Lines (S.A.), Inc. Reorganization Trust.

John D. Kimball, Healy & Baillie, New York City, for United Kingdom Mutual Protection & Indemnity Association, Inc.

Leonard Jacques, The Leonard Jacques Law Firm, Detroit, MI, for Asbestosis Claimants.

Richard H. Brown, Jr., Kirlin, Campbell & Keating, New York City, for American Steamship Owners Mutual Protection & Indemnity Association, Inc.

William R.P. Hogan, Freehill, Hogan & Mahar, New York City, for West of England Owners Mutual Protection & Indemnity Association, Inc.

Helen M. Benzie, Bigham, Englar, Jones & Houston, New York City, for Continental Insurance Corporation.

John D. Kimball, Healy & Baillie, New York City, for United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited.

George W. Sullivan, Lilly Sullivan Purcell Barkan & Junge, P.C., New York City, for Assuranceforeningen Skuld.

Marshall P. Keating, Kirlin Campbell & Keating, New York City, for Liverpool & London Mutual Steamship Protection & Indemnity Association Limited.

Alexander F. Vitale, Freehill, Hogan & Mahar, New York City, for West of England Ship Owners Mutual Insurance Association (Luxembourg) in No. 95 Civ. 3177.

Michael Corrigan, Simpson, Thacher & Bartlett, New York City, for Travelers Insurance Company in Nos. 95 Civ. 3177, 95 Civ. 3187, 95 Civ. 3189.

Nick Evan, Simpson Thacher & Bartlett, New York City, for Travelers Insurance Company in No. 95 Civ. 3179.

## OPINION AND ORDER

STEIN, District Judge.

This is an appeal from an order of the bankruptcy court, dated February 28, 1995, entered in accordance with a decision issued by that court on July 5, 1994, which, *inter alia:* denied appellants' motions for summary judgment for lack of a justiciable case or controversy; denied appellants' motions for summary judgment on the ground that this action is a "non-core" proceeding; sua sponte granted summary judgment to appellee on the question of when insurance coverage is triggered pursuant to the insurance policies in question; denied four of the appellants' motions to stay the action pending arbitration; denied appellants' motions to dismiss the complaint of the intervenors; and denied appellants' motions for summary judgment on appellee's claims for punitive damages and attorneys fees and on its claim pursuant to N.Y.Gen.Bus. Law § 349.

Appellees have moved to dismiss the appeal in part on the ground that only the bankruptcy court's decision on arbitrability is appealable as of right. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Most of the facts pertinent to this motion are set forth fully in the extensive opinion of the bankruptcy court, *see In re United States Lines, Inc.,* 169 B.R. 804, 809–11 (Bankr. S.D.N.Y.1994), familiarity with which is presumed.

United States Lines, Inc. and United States Lines (S.A.), Inc. (collectively, "Debtors"), among the world's largest shipping companies, are engaged in the international transportation of freight on ocean-going vessels. (*See* 169 B.R. at 809.) In excess of 8,000 of its former employees filed some 15,000 claims, pursuant to the Jones Act, 46 App.U.S.C. § 688 *et seq.,* and the General Maritime Law, alleging injury suffered from exposure to asbestos while employed on Debtors' ships. (*See* 169 B.R. at 809.)

At various times during their existence, Debtors purchased insurance contracts, known as Protection and Indemnity policies ("P & I policies") from appellants, who are foreign and domestic maritime insurers ("the P & I Clubs" or "the Clubs"). (*See* 169 B.R. at 809.) The policies protect the insured against, *inter alia,* liability for bodily injury or death for which the insured is liable by reason of the fact that it owns or operates the insured vessel. (*See* 169 B.R. at 809.) Generally, a particular Club would insure Debtors' entire fleet for a particular year, with policy limits varying from year to year, and deductibles ranging from $250 to $100,000 for each accident or occurrence. (*See* 169 B.R. at 810.)

On November 24, 1986, Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code, see 11 U.S.C. § 101 *et seq.* (*See* 169 B.R. at 810.) Debtors' plan was confirmed on May 16, 1989. (*See* 169 B.R. at 810.)

The plan transfers Debtors' maritime insurance rights to appellee United States Lines, Inc. and United States Lines (S.A.),

Inc. Reorganization Trust ("the Trust") and its Trustee. (*See* 169 B.R. at 810.) The Trustee is authorized to resolve disputed personal injury claims, distribute the Debtors' assets to claimants, and collect funds for reimbursements of those distributions pursuant to the Debtors' maritime insurance policies, including the P & I policies. (*See* 169 B.R. at 810.)

On December 8, 1992, the bankruptcy court entered a stipulation of conditional settlement between the Trust and a group of 106 claimants represented by the law firm of Dickstein, Shapiro & Morin ("the DSM Claimants"). (*See* 169 B.R. at 811.) The following month, the Trust filed this proceeding seeking a declaration, pursuant to 28 U.S.C. § 2201, of its and the Clubs' respective rights and obligations pursuant to the P & I policies. (*See* 169 B.R. at 811; Appellants' Joint Record on Appeal ("R.") Vol. I, No. 1.) On April 12, 1993, the bankruptcy court granted the Asbestosis Claimants' motion to intervene pursuant to Fed.R.Civ.P. 24 and Fed.R.Bankr.P. 7024. (*See* 169 B.R. at 811.) The Asbestosis Claimants seek similar declaratory relief. (*See* 169 B.R. at 811; R. Vol. I., No. 19.)

Subsequently, the Clubs moved for summary judgment and to dismiss the intervention complaint. As noted, on July 5, 1994, the bankruptcy court issued an opinion denying the motion in all but one respect not relevant here and sua sponte granted summary judgment to the Trust and the Asbestosis Claimants on one issue. (*See* 169 B.R. at 831–32.)

At a status conference held on February 28, 1995, the parties presented to the bankruptcy court a final stipulation of settlement between the Trust and the Clubs with regard to the claims of the 106 DSM claimants. (R. Vol. VIII, Nos. 82, 84.) The court entered this stipulation as an order two days later. (R. Vol. VIII, No. 82.)

Also on February 28, 1995, the Clubs requested leave of the bankruptcy court to file a motion to reconsider that portion of the July 5, 1994 decision holding that a justiciable case or controversy was before the court, on the ground that the settlement of the 106 DSM claims had mooted the entire action. (R. Vol. VIII, No. 84, at 10–11.) The bankruptcy court orally denied the application, stating: "You can make [that argument] before the District Judge if you feel [the case is] moot and it should be vacated, but let a District Judge decide that." (R. Vol. VIII., No. 84, at 13.) The same day, the bankruptcy court issued an order in accordance with the July 5, 1994 decision, and that order was entered three days later. (R. Vol. VIII, No. 81.) The Clubs timely appealed the order.[1]

### DISCUSSION

All parties agree that, by virtue of 9 U.S.C. § 16(a)(1)(A) and 28 U.S.C. § 158(a), only the bankruptcy court's order denying a stay of the proceedings pending arbitration to West of England, UK Club, Liverpool & London, and Skuld (collectively "the Foreign Clubs") is appealable as of right by those parties. The issues for determination are (1) whether the Foreign Clubs may appeal more than just that portion of the bankruptcy court's order; and (2) if so, whether the American Club, the Fulton Syndicate Survivors, Continental, and Travelers (collectively "the Domestic Clubs") may join in the appeal of those other portions of that order, given that they do not have an appeal as of right as to any portion of the order. The Clubs make a

---

1. Appellants West of England Ship Owners Mutual Insurance Association (Luxembourg) Ltd. ("West of England"), United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Ltd. ("UK Club"), Liverpool and London Steamship Protection and Indemnity Association Ltd. ("Liverpool & London"), Assuranceforeningen Skuld ("Skuld"), and American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("American Club") filed notices of appeal pursuant to Fed.R.Bankr.P. 8001(a).

Aetna Casualty and Surety Co., CIGNA Property and Casualty Insurance Co., Great American Insurance Co., Hartford Fire Insurance Co., United States Fire Insurance Co. (collectively "the Fulton Syndicate Survivors"), Continental Insurance Co. ("Continental"), and the Travelers Indemnity Co. ("Travelers") filed motions for leave to appeal pursuant to Fed.R.Bankr.P. 8001(b) and 8003.

To whatever extent notices of appeal were improperly filed, the Court considers them to be motions for leave to appeal, pursuant to Fed. R.Bankr.P. 8003(c). *See In re Ionosphere Clubs, Inc.,* 179 B.R. 24, 28 (S.D.N.Y.1995); *In re Pan Am Corp.,* 159 B.R. 396, 401 (S.D.N.Y.1993).

number of contentions that the Court will address in turn.

## A. Mootness and Ripeness

■ The UK Club, Liverpool & London, and the American Club, going beyond what the Court has understood to be the scope of these motions, urge that the opinion below be vacated and the case be dismissed as moot in light of the final settlement with regard to the 106 DSM claims. They contend that the bankruptcy court rested its opinion with regard to the justiciability of this action on the fact that the 106 DSM claims had not been fully settled. Now that those claims have been settled, they contend, the claims of the Asbestosis Claimants are not yet "of sufficient immediacy and reality" to form the basis of a live case or controversy. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The argument, therefore, is more accurately stated as one of both mootness and lack of ripeness: the action is moot with regard to the 106 DSM claimants, and not ripe with regard to the Asbestosis Claimants.

> These appellants correctly note that
>
> [t]he established practice of [an appellate court] in dealing with a civil case from a court in the federal system which has become moot while on its way [to the reviewing court] or pending [that court's] decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.

*United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

The statement from *Munsingwear,* however, is not applicable in this case. The event that appellants assert mooted this matter, the DSM settlement, occurred not while the case was "on its way here," but while it was still in the bankruptcy court. The issue was presented to the bankruptcy court on February 28, 1995 in the form of an oral application to make a motion to reconsider, and the court orally denied the application the same day, implicitly holding that the DSM settlement did not affect the justiciability of the matter. The court then entered as an order of the court the stipulation of settlement on March 2, 1995, and entered an order embodying the July 5, 1994 decision the following day.[2]

Given the procedural posture of the case, then, the Clubs' attempt to have this Court consider the mootness/ripeness issue is simply an attempt to raise that issue on an interlocutory basis. The bankruptcy court's holding that the case presents a live controversy, underlying its denial of the motion to dismiss for lack of subject matter jurisdiction, was made in the July 5, 1994 decision, reaffirmed at the February 28, 1995 status conference in light of the DSM settlements, and entered as an order on March 3, 1995. This portion of the order, therefore, is like any other denial of a motion to dismiss for mootness or lack of ripeness, or, indeed, for lack of subject matter jurisdiction generally: an unreviewable, interlocutory order. *See* 28 U.S.C. § 158(a); *In re Cedar Tide Corp.,* 859 F.2d 1127, 1131–32 n. 4 (2d Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 405 (1989); *In re United States Catholic Conference,* 824 F.2d 156, 164 (2d Cir.1987), *rev'd on other grounds sub nom., United States Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988); *see also Triad Assocs., Inc. v. Robinson,* 10 F.3d 492, 496 n. 2 (7th Cir.1993) (denial of motion to dismiss for lack of standing not final judgment); *Crymes v. DeKalb County,* 923 F.2d 1482, 1484 (11th Cir.1991) (per curiam) (denial of motion to dismiss on ripeness grounds not immediately appealable). If this Court may review the bankruptcy court's determination of justiciability, the justification for such review must lie elsewhere.

---

2. Thus, Skuld's assertion that *"[s]ince the entry of the order* of February 28, 1995 [embodying the July 5, 1994 decision], certain significant developments [the DSM settlements] have occurred"* (Skuld's Mem. of Law at 5) (emphasis added), and Liverpool & London's assertion that "[t]he DS & M cases have been settled, paid and removed as a basis for jurisdiction to hear the Adversary Complaint *since [the bankruptcy court's] Order was entered"* (Liverpool & London's Mem. of Law at 12) (emphasis added), are, at best, misleading.

## B. Appealability of an Order Pursuant to 28 U.S.C. § 2201

■ The U.K. Club contends that the portion of the bankruptcy court's order holding that a live case or controversy exists pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as well as that portion granting summary judgment to the Trust and the asbestosis Claimants sua sponte pursuant to that Act, are immediately appealable pursuant to 28 U.S.C. § 2201(a). That subsection provides, in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. *Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.*

(emphasis added). The U.K. Club contends that the second sentence of § 2201(a) by itself renders final both the bankruptcy court's declaration of what event triggers policy coverage and its determination that it had the authority to make that declaration.

This contention was thoroughly addressed and rejected by the Seventh Circuit in *Peterson v. Lindner*, 765 F.2d 698, 702–04 (7th Cir.1985). The court there wrote that, while "declaratory judgments are intended to be as 'final' as any other judgments," there was no support for the "proposition that section 2201 was intended to make declaratory judgments somehow more final, or final at an earlier stage, than other sorts of judgments." *Id.* at 703. Rather, the second sentence of § 2201 embodies "the unremarkable proposition that when a declaratory judgment otherwise meets the requirements for finality, it will be considered final even though the relief granted is 'merely' declaratory rather than coercive." *Id.; see also Curlott v. Campbell*, 598 F.2d 1175, 1180 (9th Cir.1979); *Southern Parkway Corp. v. Lakewood Park Corp.*, 273 F.2d 107, 108 (D.C.Cir.1959).

Thus, that provision does not, in and of itself, make any portion of the bankruptcy court's order appealable.

## C. Interlocutory Appeal Pursuant to 28 U.S.C. § 158(a)(3)

■ The Clubs argue that the portions of the bankruptcy court's order other than the arbitrability issue are the proper subjects for an interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3), which provides: "The district courts of the United States shall have jurisdiction to hear appeals with leave of the court, from ... interlocutory orders and decrees...." In determining whether the Court should grant leave to appeal pursuant to this provision, it utilizes the standard set forth in 28 U.S.C. § 1292(b). *In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 28 (S.D.N.Y. 1995); *In re Pan Am Corp.*, 159 B.R. 396, 401 (S.D.N.Y.1993). Pursuant to that statutory provision, granting leave to file an interlocutory appeal is appropriate only where the order appealed from "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and ... [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See Ionosphere Clubs*, 179 B.R. at 28; *Pan Am Corp.*, 159 B.R. at 401. Moreover, these conditions will exist only in "exceptional circumstances." *See Ionosphere Clubs*, 179 B.R. at 28; *Pan Am Corp.*, 159 B.R. at 401.

Only the bankruptcy court's rulings as to justiciability and the core/non-core issue even arguably satisfy the third criterion. As to the former, it is unclear on this record how far the claims of the Asbestosis Claimants have advanced so as to constitute a live controversy, in light of the settlement of the DSM claims. Because the question of justiciability is highly fact-dependent, and because the record is unclear, the issue of justiciability does not present a controlling question of law and an interlocutory appeal would not be proper. *See Genentech, Inc. v. Novo Nordisk A/S*, 907 F.Supp. 97, 99 (S.D.N.Y.1995); *Olin Corp. v. Insurance Co. of N.Am.*, 607 F.Supp. 1377, 1378–79 (S.D.N.Y.1985).

■ Moreover, a resolution by this Court of the core/non-core issue will not necessarily "materially advance the ultimate termination of the litigation." If this Court were to hold

that the proceedings are non-core, such a holding would disable the bankruptcy court only from "enter[ing] appropriate orders and judgments," 28 U.S.C. § 157(b)(1), and would subject its findings of fact and conclusions of law to de novo review in this Court. *See* 28 U.S.C. § 157(c)(1); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed*, — U.S. —, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994); *In re Adelphi Inst., Inc.*, 112 B.R. 534, 539 (S.D.N.Y.1990). The bankruptcy court would not be divested of jurisdiction and the proceedings would continue in that court. *See, e.g., In re Pied Piper Casuals, Inc.*, 65 B.R. 780, 781 (S.D.N.Y.1986) (reversing bankruptcy court's determination that proceeding is core and remanding to that court as non-core proceeding). Thus, this issue is not a proper subject for an interlocutory appeal.

Accordingly, the Clubs' assertion that the entire bankruptcy order ought to be reviewed on an interlocutory basis pursuant to 28 U.S.C. § 158(a)(3) is without merit.

### D. The Collateral Order Doctrine

■ The Clubs also urge that this Court exercise appellate jurisdiction over the non-appealable portions of the bankruptcy court's order pursuant to the "collateral order" doctrine, first enunciated by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). In a recent explication of that doctrine, the Supreme Court wrote that the "small category" of non-final orders qualifying as appealable collateral orders "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers County Commission*, — U.S. —, —, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995).

The Court need not enter into an extensive discussion of how many, if any, of the non-appealable issues in this case satisfy either or both of the first two elements of this test, for none satisfies the third criterion. Accordingly, the Court may not exercise appellate jurisdiction over any of the non-appeal-able issues pursuant to the collateral order doctrine.

### E. Pendent Appellate Jurisdiction

■ The Clubs' main contention is that, because one portion of the March 1995 order may be appealed as of right, all other portions of that order may be appealed pursuant to the doctrine of "pendent appellate jurisdiction." The controlling case in this area is the opinion of the Supreme Court in *Swint*, — U.S. at — – —, 115 S.Ct. at 1208–12.

In *Swint*, plaintiffs brought an action pursuant to 42 U.S.C. § 1983 against several police officers, a municipality, and a county commission. *See id.* at —, 115 S.Ct. at 1206. The district court denied the officers' motion to dismiss on the ground of qualified immunity, and also denied both the city's and the county's motions to dismiss. *See id.* All defendants appealed. *See id.* at —, 115 S.Ct. at 1207. The Eleventh Circuit had appellate jurisdiction over the appeals of the individual defendants pursuant to *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985). In addition, the court exercised "pendent appellate jurisdiction" to hear the county's appeal, and reversed the district court's order denying summary judgment to that party. *Swint*, — U.S. at —, 115 S.Ct. at 1207. Relying heavily on the lack of statutory authority justifying pendent appellate jurisdiction, the Supreme Court unanimously vacated the Eleventh Circuit's opinion, holding that that court had erred in exercising such jurisdiction. *See id.* at — – —, 115 S.Ct. at 1208–12.

However, the Court cited with approval its own past decisions in which they had not "required courts of appeals to confine review to the precise decision independently subject to appeal." *Id.* at — – —, 115 S.Ct. at 1211–12. In the Court's penultimate paragraph, it explained:

> We need not definitively or preemptively settle here whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable. The parties do not contend that the District Court's deci-

sion to deny the Chambers County Commission's summary judgment motion was *inextricably intertwined* with that court's decision to deny the individual defendants' qualified immunity motions, or that review of the former decision was *necessary to ensure meaningful review* of the latter. *Id.* at ——, 115 S.Ct. at 1212 (emphasis added) (citation omitted).

The Second Circuit has since held that its previous precedents establishing the existence of pendent appellate jurisdiction remain, for the most part, undisturbed by *Swint,* especially in light of the passage from that opinion cited above. In *Kaluczky v. City of White Plains,* 57 F.3d 202, 206–07 (2d Cir.1995), the court wrote:

> An appellate court having jurisdiction over some questions on appeal may exercise its discretion to take pendent jurisdiction over independent nonappealable, but related questions. *See Golino v. City of New Haven,* 950 F.2d 864, 868–69 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); *San Filippo v. United States Trust Co.,* 737 F.2d 246, 255 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). The Supreme Court has recently cautioned that, on an interlocutory appeal from an order rejecting a claim of qualified immunity, a claim involving a "pendent party" is an "unrelated question" that cannot be resolved under pendent jurisdiction. *However, the Court did not otherwise narrow the scope of pendent jurisdiction, and appeared to contemplate pendent appellate jurisdiction over an independent but related question that is "inextricably intertwined" with the issue of qualified immunity or is "necessary to ensure meaningful review" of that issue.*

(emphasis added) (citation omitted).

■ More recently, the Second Circuit has cautioned that "pendent appellate jurisdiction should be exercised sparingly, if

ever." *Mancuso v. New York State Thruway Auth.,* 86 F.3d 289, 292 (2d Cir.1996). Still, it has echoed the Supreme Court's suggestion that such jurisdiction may be exercised when appellate review of an otherwise non-appealable issue is "inextricably intertwined" with or "necessary to ensure meaningful review" of appealable issues, *see id.; Cooper v. Town of East Hampton,* 83 F.3d 31, 36 (2d Cir.1996); *Blue v. Koren,* 72 F.3d 1075, 1084 n. 6 (2d Cir.1995); *Rodriguez v. Phillips,* 66 F.3d 470, 482–83 (2d Cir.1995), and it has actually exercised pendent appellate jurisdiction in at least one instance since *Swint* was decided, *see Blue,* 72 F.3d at 1084 n. 6. Even where it is permitted, the exercise of pendent appellate jurisdiction is discretionary. *Rodriguez,* 66 F.3d at 483.[3]

With regard to the Bankruptcy court's rulings regarding the Clubs' motions to dismiss the intervention complaint of the Asbestosis Claimants, the justiciability of the dispute, the triggering of insurance coverage, and the motions to dismiss the claims for punitive damages and attorneys fees, and the claim pursuant to N.Y.Gen.Bus. Law § 349, it is difficult to fathom how these issues are "inextricably intertwined" with the denial of the stay of arbitration, or how resolution of those issues is "necessary to ensure meaningful review" of that issue. The Clubs do not make any colorable arguments to that effect.

■ However, whether resolution of the core/non-core issue is "inextricably intertwined" with, or "necessary to ensure meaningful review" of, the arbitrability issue is a more complex question to which the Court now turns.

### F. Core/Non–Core and its Relation to Arbitrability

■ The bankruptcy court below wrote that the core/non-core issue was crucial to the question of whether the court had discretion to refuse to give effect to a valid arbitration clause. *See In re U.S. Lines,* 169 B.R.

---

**3.** The Court has located no decision of any federal court applying the teachings of *Swint* in the context of an appeal from an order of the Bankruptcy court to the district court. However, in at least one pre-*Swint* case from this district, the court exercised pendent appellate jurisdiction in

that context without distinguishing it from the situation in which that doctrine ordinarily applies, *viz.* an appeal from the district court to the circuit court. *See In re River Foal, Inc.,* 161 B.R. 568, 570 (S.D.N.Y.1993). The parties agree that *Swint* is fully applicable to this case.

at 823–24. However, this Court's review of such questions of law is plenary and it therefore must make an independent determination of whether this was a correct view of the law.

The question of what, if any, discretion a court enjoys to deny effect to a valid arbitration clause in a bankruptcy proceeding was most extensively discussed in the decision of the Court of Appeals for the Third Circuit in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–62 (3d Cir.1989). In that opinion, the court relied upon "the strength of the national policy favoring arbitration clauses, as reflected in the recent Supreme Court cases,"[4] in holding that

> the district court lacked the authority and discretion to deny enforcement of the arbitration clause unless [the party opposing arbitration] had met its burden of showing that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration clause *in a case of this kind, that is, a non-core proceeding brought by a trustee to enforce a claim of the estate in a district court.*

*Hays*, 885 F.2d at 1155–56, 1156–57 (footnotes omitted).

The court then proceeded to determine whether or not Hays had met its burden and concluded that

> Hays has pointed to no provisions in the text of the bankruptcy laws, and we know of none, suggesting that arbitration clauses are unenforceable *in a non-core adversary proceeding in a district court to enforce a claim of the estate.*
>
> . . . .
>
> Similarly, Hays has identified no legislative history indicating that *this kind of proceeding* was intended to be an exception to the mandate of the Arbitration Act. . . . Its articulation of the bankruptcy policy that must override the policy favor-

ing arbitration . . . is couched in generalities that lack persuasive force *at least in the context of a non-core adversary suit brought to enforce a claim of the estate in a district court.*

*Id.* at 1157 (emphasis added) (footnote omitted).

■■■ Virtually every court that has addressed the issue of a bankruptcy court's discretion, if any, to decline to enforce an arbitration clause after *Hays* has cited that opinion with approval. *See In re Gurga*, 176 B.R. 196, 200 (9th Cir. BAP 1994); *In re James P. Barkman, Inc.*, 170 B.R. 321, 323 (Bankr.E.D.Mich.1994); *In re American Freight Sys., Inc.*, 164 B.R. 341, 346–47 (D.Kan.1994); *In re Hupp Indus., Inc.*, 157 B.R. 360, 362 (Bankr.N.D.Ohio 1993); *In re P & G Drywall and Acoustical Corp.*, 156 B.R. 704, 705–06 (Bankr.D.Me.1993); *In re Midwest Communications Corp.*, 144 B.R. 354, 355–56 (Bankr.E.D.Ky.1992); *In re Chorus Data Systems, Inc.*, 122 B.R. 845, 851–52 (Bankr.D.N.H.1990). While obviously not bound by that opinion, the Court is persuaded by its reasoning and its general holding that the strong national policy favoring arbitration of disputes sharply curtails or even eliminates the discretion enjoyed by a court to refuse to enforce a valid arbitration clause, even in a bankruptcy proceeding.

However, that does not end the matter, for the question for determination is whether the existence or proper exercise of that discretion is dependent in any significant degree on whether the bankruptcy proceeding is core or non-core. The *Hays* court clearly relied upon the fact that the proceeding at issue was non-core in concluding that the district court lacked discretion to deny enforcement to a valid arbitration clause. However, the court did not expressly state whether and to what extent its analysis would have differed had the proceeding been core.

4. *See, e.g., Rodriguez de Quijas v. Shearson/American Express*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v.*

*Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

It is unclear whether *Hays* establishes a per se rule that a court utterly lacks discretion to deny effect to a valid arbitration clause in non-core cases, but that it might enjoy such discretion in core cases, and that such discretion must be exercised based on a case-by-case analysis of whether arbitration would conflict with the Bankruptcy Code in light of the facts of the particular case; or whether the court must perform such a case-by-case analysis, regardless of whether the proceeding is core or non-core, but that the fact that a proceeding is non-core weighs heavily in favor of sending the matter to arbitration.

The Court takes no position at this time on which of these readings of *Hays* is the more accurate statement of the law. Regardless of the ultimate determination of this issue, it will be more likely in a core than in a non-core proceeding that arbitration would conflict with the purposes of the Bankruptcy Code. Thus, the resolution of the issue of whether these proceedings are core or non-core will have a serious—if not dispositive—impact on the appealable issue: whether the bankruptcy court erred in refusing to send this matter to arbitration with regard to the four foreign Clubs. *See In re Spectrum Info. Technologies, Inc.,* 183 B.R. 360, 363 (Bankr. E.D.N.Y.1995); *In re Sacred Heart Hosp. of Norristown,* 181 B.R. 195, 202 (Bankr. E.D.Pa.1995); *Gurga,* 176 B.R. at 200; *American Freight Sys.,* 164 B.R. at 347; *Hupp Indus.,* 157 B.R. at 362; *Midwest Communications,* 144 B.R. at 356; *In re FRG,* 115 B.R. 72, 74 (E.D.Pa.1990). *But see James P. Barkman, Inc.,* 170 B.R. at 323 n. 1 (dictum); *In re Statewide Realty Co.,* 159 B.R. 719, 724 (Bankr.D.N.J.1993).

Thus, the issues are more than simply "related"; there is more than merely "overlap"; in a very real sense, they are "inextricably intertwined," such that resolution of the former issue is "necessary to ensure meaningful review" of the latter, *Swint,* —— U.S. at ——, 115 S.Ct. at 1212, especially in light of the lack of clarity in the law, *see Blue,* 72 F.3d at 1084 n. 6. Accordingly, with regard to the core/non-core issue, and with regard to the four foreign clubs, this case fits within the exception, suggested by the Su-

preme Court in *Swint* and embraced by the post-*Swint* Second Circuit cases, to the general rule against pendent appellate jurisdiction. Moreover, the Court, in its discretion, will exercise that jurisdiction.

### G. Pendent Party Appellate Jurisdiction

■ In light of the fact that the Court possesses, and will exercise, pendent appellate jurisdiction with regard to the core/non-core issue vis-à-vis the Foreign Clubs, the Court must now determine whether it may exercise "pendent party appellate jurisdiction" with regard to the same issue, vis-à-vis the Domestic Clubs, which have no otherwise appealable issue.

*Swint* itself makes no relevant distinction between pendent appellate jurisdiction and pendent party appellate jurisdiction, except that it notes in passing that the court of appeals in that case "asserted not merely pendent appellate jurisdiction but pendent party appellate jurisdiction." *Swint,* —— U.S. at —— n. 6, 115 S.Ct. at 1211 n. 6. This does not indicate that the Court disfavors the latter any more than the former. *But see Pickens v. Hollowell,* 59 F.3d 1203, 1208 (11th Cir.1995) (reading *Swint* as eviscerating pendent party appellate jurisdiction while leaving pendent appellate issue jurisdiction "uncertain").

The Second Circuit's opinion in *Kaluczky* might be read as strictly limiting pendent party appellate jurisdiction as distinguished from pendent appellate jurisdiction. The court interpreted *Swint* as cautioning

> that, on an interlocutory appeal from an order rejecting a claim of qualified immunity, *a claim involving a "pendent party" is an "unrelated question" that cannot be resolved under pendent jurisdiction.* However, the Court did not otherwise narrow the scope of pendent jurisdiction, and appeared to contemplate pendent appellate jurisdiction over an independent but related *question* . . . .

*Kaluczky,* 57 F.3d at 207 (emphasis added) (citation omitted).

However, this passage does not contemplate a situation such as the one presented here, where an issue over which the Court

exercises appellate jurisdiction with regard to some parties is identical to an issue over which the Court lacks jurisdiction with regard to other parties. It appears that the "inextricably intertwined" standard applies with equal force to pendent parties as it does to pendent issues, and the putative appeal of the Domestic Clubs could not be more inextricably intertwined with the appeal of the Foreign Clubs than when they involve the same issue. *See Eagle v. Morgan,* No. 95-3418, 1996 WL 375902, at *8 (8th Cir. July 8, 1996) (exercising appellate jurisdiction over pendent party where issue presented on pendent party's appeal was coterminous with those properly on appeal, and because disposition of latter necessarily disposed of former); *Moore v. City of Wynnewood,* 57 F.3d 924, 929–30 (10th Cir.1995) (same); *cf. Brennan v. Township of Northville,* 78 F.3d 1152, 1158 (6th Cir.1996) (indicating that court would have exercised appellate jurisdiction over pendent party had that party appealed). In such a case, there is no danger of the parties "parlay[ing appealable] orders into multi-issue interlocutory appeal tickets," *Swint,* —— U.S. at ——, 115 S.Ct. at 1211, because the Court is simply allowing some parties to participate in an appeal of an issue that the Court would otherwise hear in any event.

Moreover, as noted above, *Swint* does not radically change the law in this circuit, and before *Swint,* the Second Circuit had on several occasions exercised pendent party appellate jurisdiction. *See, e.g., McCowan v. Sears, Roebuck and Co.,* 908 F.2d 1099, 1104–05 (2d Cir.), *cert. denied,* 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990); *Barrett v. United States,* 798 F.2d 565, 570–71 (2d Cir. 1986); *United States v. Tom,* 787 F.2d 65, 68 n. 3 (2d Cir.1986).

Finally, if and when it becomes necessary for this Court to decide the core/non-core issue, that determination will become the law of the case, binding all parties in the case, including the Domestic Clubs. *See In re Ivan F. Boesky Sec. Litig.,* 957 F.2d 65, 69 (2d Cir.1992); *Manhattan Eye Ear & Throat Hosp. v. National Labor Relations Board,* 942 F.2d 151, 156 (2d Cir.1991); *In re Chateaugay Corp.,* 136 B.R. 79, 83 (Bankr.

S.D.N.Y.1992). They should be permitted to present arguments on that issue on their own behalf.

Thus, concerns based on both efficiency and fairness dictate that the Court possesses pendent party appellate jurisdiction in this instance, *see Gilda Marx, Inc. v. Wildwood Exercise, Inc.,* 85 F.3d 675, 679 (D.C.Cir. 1996) (per curiam), and the Court, in its discretion, chooses to exercise that jurisdiction.

### CONCLUSION

For the foregoing reasons, appellees' motions to dismiss portions of the appeal are denied to the extent that the Court will exercise appellate jurisdiction over the "core/non-core" issue as to all parties, as well as the issue that is appealable as of right, and the motions are otherwise granted.